TIOGA PINES LIVING CENTER, INC. and Bloomington Convalescent Center, Inc., Appellant–Plaintiffs,

v.

INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, Cheryl Sullivan, Administrator of the Indiana Family and Social Services Administration, in her official capacity, The Indiana Office of Medicaid Policy and Planning, and James Verdier, Assistant Administrator of the Indiana Family and Social Services Administration and Administrator of the Indiana Office of Medicaid Policy and Planning, in his official capacity, Appellee–Defendants.

No. 30A04–0104–CV–142.

Court of Appeals of Indiana.

Nov. 21, 2001.

J. Michael Grubbs, Jody Deford, Barnes & Thornburg, Indianapolis, IN, for Appellant.

David F. McNamar, Lowe, Gray, Steele & Darko, Indianapolis, IN, for Appellee.

## OPINION

ROBB, Judge.

Seven class members ("Intervenors") appeal the trial court's judgment of March 6, 2001, ordering members of the class (for which Tioga Pines is the named plaintiff) to each pay a portion of the attorneys fees owed to Class Counsel. We affirm the trial court's order apportioning fees.

*Issues*

Intervenors present one issue for our review, namely whether the trial court erred in its apportionment of attorney fees. In addition, Class Counsel raises the following two issues:

1) Whether Class Counsel should be awarded appellate attorney fees under Ind. Appellate Rule 66(E); and

2) Whether the trial court erred in not allowing interest to begin accumulating after the previous attorney fee judgment was entered on March 31, 1997.

*Facts and Procedural History*

This matter has been before this court four times previously in one form or another.[1] For brevity's sake, we have omitted a description of each prior case and instead have attempted to summarize the previous litigation. In 1990, two lawyers ("Class Counsel") representing several nursing homes began an action against the State, and the suit eventually became a class action. The class included 785 nursing homes in Indiana who are certified providers under Medicaid regulations. The class claimed that certain aspects of the Medicaid reimbursement scheme, specifically 470 I.A.C. 5–4.1 ("Rule 4.1"), did not comply with federal and state law, had not been lawfully promulgated, and did not adequately reimburse class members for services rendered to Medicaid patients. Thus, the class sought an injunction to prevent the enforcement of Rule 4.1.

The Indiana Health Care Association had already hired counsel for similar litigation on behalf of 151 nursing homes that were part of the Association. Those attorneys were permitted to intervene in the ongoing class action, although Class Counsel remained the lead counsel in the case. While the litigation was in progress, the State promulgated new regulations concerning reimbursement ("Rule 4.2"). Class Counsel then amended the complaint, alleging that Rule 4.2 also did not adequately reimburse the class members for services rendered to Medicaid patients. However, an ongoing problem with the class's complaint was that some of the nursing homes would, in some ways, fare better under Rule 4.2 than under Rule 4.1.

Finally, in 1996, the action reached settlement. The settlement agreement provided that the State would never implement Rule 4.2. However, the settlement agreement had opposition within the class from certain nursing homes that would have received higher revenue under certain portions of Rule 4.2. During the settlement discussions, Class Counsel sought attorney's fees under Indiana Trial Rule 23(D), which provides that "[T]he court shall allow reasonable attorney's fees ... incurred from a fund recovered for the benefit of a class ..." The trial court awarded fees to Class Counsel to be paid out of the fund recovered by the class. The current appeal is the second appeal regarding this attorney fee award.

The trial court entered its first order apportioning attorney fees for Class Counsel on March 31, 1997. In that order, the court determined the class had received a total of over $65 million (the "tangible benefits") due to the permanent injunction of Rule 4.2. The judge determined the

---

1. See *Indiana State Bd. of Public Welfare v. Tioga Pines Living Center, Inc.,* 575 N.E.2d 303 (Ind.Ct.App.1991), *trans. denied; Indiana State Bd. of Public Welfare v. Tioga Pines,* 622 N.E.2d 935 (Ind.1993), *cert. denied,* 510 U.S. 1195, 114 S.Ct. 1302, 127 L.Ed.2d 654 (1994); *Indiana State Bd. of Public Welfare v. Tioga Pines,* 637 N.E.2d 1306 (Ind.Ct.App. 1994); and *Community Care Centers, Inc. v. Indiana Family and Social Services Administration,* 716 N.E.2d 519 (Ind.Ct.App.1999), *trans. denied.*

class members also received many "intangible benefits" from the actions of Class Counsel, including the promulgation of "Rule 14,"[2] which replaced Rules 4.1 and 4.2. Therefore, the court awarded Class Counsel a total fee of $6.25 million, with $4 million of the fee to be based on the tangible benefits and the remaining $2.25 million based on intangible benefits.[3] Then the fee award was divided up proportionally among the class members. Each facility had to pay its share of the "tangible benefits" portion based upon its proportionate share of tangible benefits received, and each facility also had to pay the "intangible benefits" portion based upon its number of Medicaid-certified beds.

Several of the class members were dissatisfied with the way the trial court divided up the fee award in the March 31, 1997, order. Their appeal of the settlement agreement is the subject of *Community Care Centers, Inc. v. FSSA*, 716 N.E.2d 519 (Ind.Ct.App.1999). In that case, a panel of this court ruled that:

> While we uphold the $6.25 million attorney's fee award as reasonable, we conclude that the fee award was improperly based upon intangible benefits. Therefore, we remand to the trial court to reapportion the fee, so that the amount the facilities named in this appeal are required to pay in attorney's fees is in proportion to the amount of tangible benefits received.

*Id.* at 555.

The instant appeal arises from the trial court's order dated March 6, 2001, reapportioning Class Counsel's fees based upon our ruling in *Community Care Centers*.

The trial court calculated the original division of fees in the March 31, 1997, order based upon the proportionate benefit to each individual nursing home. That proportionate benefit included three distinct types of benefits to each home, one of which is the "per diem" benefit. On remand after the *Community Care Centers* decision, several class members ("Intervenors") argued that the fee division should emphasize the per diem component, as the Intervenors would pay substantially less in attorney fees were this factor emphasized. However, the trial court rejected this argument by Intervenors and instead allocated the fee with emphasis on the other two types of benefits.[4] It is from this order allocating fees issued on March 6, 2001, that Intervenors now appeal.

### Discussion and Decision

### I. Reapportionment of Attorney Fees

#### A. Standard of Review

■ The award of attorney's fees is committed to the sound discretion of the trial court, and we will reverse an award of attorney's fees only upon a showing of abuse of that discretion. *Community Care Centers, Inc.*, 716 N.E.2d at 550.

#### B. Per Diem Benefits

■ Intervenors argue the trial court erred in failing to include per diem benefits in its total calculation of benefits to class members; Intervenors would pay less in attorney fees if the per diem benefits were included in the calculations. On the contrary, Class Counsel argues Intervenors are barred from raising the issue of

---

**2.** 405 I.A.C. 1–14.

**3.** Before apportioning the fee among class members, the court subtracted $202,000 from the $6.25 million; that $202,000 was the amount that had already been paid to inter-

vening counsel through the Indiana Health Care Association.

**4.** The three factors and the method the trial court used to allocate the fee will be reviewed in greater detail later in this opinion.

per diem benefits in this appeal because the issue was available to Intervenors in the previous appeal, and they did not raise it at that time. Class Counsel also argues that even if Intervenors are not barred from raising the per diem issue, this court cannot grant Intervenors the requested relief because Intervenors did not present evidence to the trial court upon which an allocation could be made that incorporated per diem benefits.

The issue of per diem benefits merits further explanation prior to our analysis. As we noted previously, the trial court considered three types of tangible benefits to class members when allocating attorney fees. An understanding of the first two types of benefits, namely "change of ownership" benefits and "ancillaries" benefits, is not necessary for purposes of our discussion here, as neither party raises an issue regarding those benefits. It is enough to know the trial court found that the aggregate pecuniary benefit to the class for change of ownership benefits was $16,254,724, and the aggregate pecuniary benefit to the class for ancillaries was $48,616,051. Appellees' Appendix to Brief at 6–7. The aggregate benefit to the class for per diem benefits was found to be $431,710, but this amount was not directly included in the distribution calculation. *Id.* at 10.

The March 31, 1997, order included a mathematical calculation allocating the obligation to pay Class Counsel's attorney fees among the class members. Appellees' Appendix to Brief at 34–35. That calculation is important in this appeal because on remand, the trial court did not alter the calculation but rather simply multiplied a portion of the previous calculation by 1.5189 in order to comply with this court's

order that the fee be based only upon tangible benefits.[5] The calculation from the March 31, 1997, order was performed as follows: first, the court calculated the aggregate dollar benefit to all facilities by adding the change of ownership, ancillaries, and per diem benefits (given in the previous paragraph) for a total of $65,302,485. Next, the court determined that change of ownership benefits made up 24.89% of that total, and ancillaries benefits made up 74.45% of the total. The court then multiplied those two percentages by $4 million (the portion of the fee distribution originally based on tangible benefits) to determine the total class fee obligation for each of the two types of benefits. Finally, the court calculated each facility's share of the two types of benefits, turned that number into a percentage, and multiplied the percentage by the total class fee obligation for each type of benefit. The final number after these calculations was the base attorney fee award that each facility was to pay; on remand, the trial court used these same base attorney fees when calculating the new obligations.

Intervenors raised the issue of per diem benefits upon remand, and the trial court responded as follows:

> Intervenor–Plaintiffs contend the $6,029,634.25 [$6.25 million minus $220,365.75 paid to counsel for Intervenors] should be reapportioned with emphasis on the "per diem" component. However, the Court finds that in doing so, Intervenor–Plaintiffs would pay little to no portion of the attorney fees. The Court finds said position is unreasonable and not supported by the law of this case. In the original fee calculation this Court specifically found "The Court

---

**5.** At the same time, the trial court eliminated the previous portion of the fee based on intangible benefits; that portion was calculated

based upon each facility's total number of Medicaid-certified beds. The trial court still awarded the same total fee to Class Counsel.

finds the aggregate benefit for the per diem component is $431,710.00. Because of the inherent difficulties in allocating a net aggregate benefit to the Class to each class member, this component of the benefit is not to be included for the purpose of allocating the attorney fee award". In reviewing the file this Court finds the previous Judge of the Hancock Circuit Court made very specific findings as related to the attorney fee. The amended entry approving Class counsel's Petition for Attorney Fees and Costs clearly defines the tangible benefits. The decision further clearly defined the component that was specifically excluded for the purpose of allocating the attorney fee award. In addition, the remand order from the Court of Appeals does not include an instruction to consider the previously excluded "per diem" component ... Further, even if a facility received less per diem reimbursement under Rule 4.1 than Rule 4.2, pursuant to the evidence of the record, all facilities would have received less reimbursement under the ancillary component.

Brief of Intervenor–Appellants at 21–22. Intervenors' specific argument against these findings is that this court held in *Community Care Centers* that fees were to be distributed "in proportion to the amount of tangible benefits received" and that "the benefit conferred upon class members under the settlement was the difference between what class members received under the Rule 4.2 injunction and what they would have received under Rule 4.2." *Community Care Centers*, 716 N.E.2d at 555, 541. Thus, Intervenors argue, fees cannot be accurately calculated in proportion to total benefits received without adding into the calculations the negative impact the Rule 4.2 injunction had on the per diem benefits to some facilities.

Before we consider Intervenors' argument, we must resolve an issue raised by Class Counsel. As noted previously, Class Counsel contends Intervenors are barred from raising the issue of per diem benefits because the issue existed and was not raised during the previous appeal. Class Counsel notes the trial court found in its March 31, 1997, order that per diem benefits were not to be included for the purpose of allocating the attorney fee award. Class Counsel cites *Public Service Comm'n of Ind. v. Indiana Bell Telephone Co.*, 235 Ind. 1, 130 N.E.2d 467 (1955), for the proposition that "If a trial court's special findings of fact and conclusions of law are *undisturbed* by a reviewing court then those special findings constitute the 'law-of-the-case' and are binding upon the litigants in subsequent proceedings, including subsequent appeals." Brief of Appellees at 11. (Emphasis added.)

However, that portion of the opinion actually reads:

The special finding of facts and conclusions of law filed by the Circuit Court on January 25, 1952 and its written opinion are a part of the record in the present appeal and since they were *approved* by the action of this court in *Public Service Comm. v. Ind. Bell Tel. Co.*, 1953, 232 Ind. 332, 112 N.E.2d 751, supra, they are now a part of the law of the case ... and we accept such facts as found.

*Public Service Comm'n of Ind.*, 235 Ind. at 20, 130 N.E.2d at 476. (Emphasis added.) We note a distinction between findings and conclusions that are "undisturbed" and those that are specifically "approved" by this court.

Class Counsel has invoked the "law of the case" doctrine:

The law of the case doctrine mandates that an appellate court's determination of a legal issue binds both the trial court

and the court on appeal in any subsequent appeal involving the same case and relevantly similar facts. The doctrine's admittedly important purpose is to minimize unnecessary relitigation of the legal issues once they have been resolved by an appellate court.

*State v. Huffman,* 643 N.E.2d 899, 901 (Ind.1994) (citations omitted). We do not find that doctrine to apply here in the way Class Counsel suggests. This court did not specifically approve all of the trial court's findings and conclusions in the previous appeal. Moreover, we did not specifically rule on the per diem issue because it was not specifically raised.

Class Counsel raises a valid question regarding whether the per diem issue was available to Intervenors during the previous appeal so as to preclude them from raising it in this appeal. We conclude that although per diem benefits were addressed in the 1997 judgment, the issue was not ripe for appeal at that point. Intervenors were appealing the entire judgment, and they could not predict that this court would take the action it did, namely affirming the judgment but remanding for reallocation of fees. Thus, it does not follow that Intervenors were obligated to raise that issue during the previous appeal. We therefore turn to consideration of whether the trial court abused its discretion in its allocation of fees.

■ We find that the trial court gave solid reasons for not including per diem benefits in the individual calculation of each provider's portion of the fee in its March 31, 1997, order. First, the court noted that the testimony regarding the effect of Rule 4.2 on per diem reimbursements for individual providers included estimates that were "questionable ...

speculative and lacking in credibility." Appellee's Appendix to Brief at 9. "The estimates of the per diem benefit do not lend themselves to a reasonable allocation of the attorney fee award ... the Court has substantial reservations concerning the trustworthiness of Mr. Buoy's calculations." [6] *Id.* at 9–10. In its March 6, 2001, order, the trial court gave substantial weight to these evidentiary findings from the previous court regarding the credibility of Mr. Buoy's figures, and we do the same. Moreover, we are not in a position to reweigh this evidence.

Intervenors argue in their reply brief that the trial court did have sufficient evidence before it from which it could have reasonably calculated individual per diem benefits. Specifically, Intervenors refer to an exhibit entered into evidence at a settlement hearing in 1996, "Plaintiff's Exhibit 25":

> The figures in Exhibit 25 were the same figures ... introduced by the State as an exhibit attached to the affidavit of Keenan Buoy at the settlement agreement hearing. Unfortunately, the hard copies of the records of proceedings in this case through the previous appeal were destroyed.... Class Counsel, however, have access to all of these documents.

Reply Brief of Intervenor–Appellants at 6–7. Intervenors also note they provided these figures to the trial court on remand, and Class Counsel did not oppose the figures.

The figures from "Exhibit 25" are these: Ben Hur and Bradner facilities would not benefit overall if the per diem benefits were added in along with the other two types of benefits; in fact, those facilities

---

**6.** Mr. Buoy is a witness who testified regarding the amount of per diem benefits each provider would receive under Rule 4.2.

would have net losses of $89,204 and $109,823, respectively. A third facility, Williamsburg, would have a net benefit of $74,740, but this benefit would be significantly less than the trial court actually attributed to it because the trial court did not include per diem benefits. Yet these figures appear to come from the very same exhibit referred to by the trial court in its 1997 order; that exhibit was introduced along with Mr. Buoy's testimony. The trial court called those calculations "questionable" and so declined to use the figures in allocating fees. Appellee's Appendix to Brief at 9. We find no error here.

Finally, it is not apparent to us that an inclusion of per diem benefits in the calculations would be a proper interpretation of the language from *Community Care Centers* that Intervenors cite, namely the order to reapportion fees in proportion to tangible benefits received. Intervenors are essentially proposing we subtract from total benefits received the "absence of benefit" or "detriment." Yet we could not do this equitably without remanding to the trial court for a reexamination of the effects, positive and negative, of all three types of benefits on all class members as well as for a reworking of the entire fee allocation. We will not do this, as our standard of review requires us only to determine whether the trial court abused its discretion. We find it did not.

## II. Appellate Attorney Fees

### A. Standard of Review

■ Indiana Appellate Rule 66(E) provides that this court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution." We may award appellate attorney fees when an appeal is permeated with meritlessness, bad faith, frivolity, harass-

ment, vexatiousness, or purpose of delay. *Kuehl v. Hoyle,* 746 N.E.2d 104, 110 (Ind. Ct.App.2001). Although this rule provides this court with discretionary authority to award damages in favor of the appellee when we affirm the judgment, we must use extreme restraint when exercising its discretionary power to award damages on appeal because of the potential chilling effect upon the exercise of the right to appeal. *Id.* A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish lack of merit unless an appellant's contentions and arguments are utterly devoid of all plausibility. *Id.*

### B. Appellate Fees Under Ind. Appellate Rule 66

■ Class Counsel requests that this court award damages due to Intervenors' defective appeal. Specifically, Class Counsel argues Intervenors failed to raise the per diem issue in the previous appeal, they failed to offer competent evidence upon which the trial court could have based its calculations, and they failed to provide citation to authority supporting their position. Intervenors argue Class Counsel is not entitled to damages, as their argument for inclusion of per diem benefits is a reasonable interpretation of the previous opinion of this court; as they offered evidence to the trial court as referenced in section I(B), infra; and as the only authority they need cite is the previous opinion of this court.

This court has previously noted that "[a] strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish lack of merit unless an appellant's contentions and arguments are utterly devoid of all plausibility." *Kuehl,* 746 N.E.2d at 110. We cannot say that Intervenors' argument is utterly devoid of plausibility, as this

court did not specifically and directly address the per diem issue in the previous opinion. As to the other arguments made by Class Counsel that Intervenors' appeal is defective, we decline to award damages on those grounds. There was some evidence before the trial court regarding the per diem benefits, but the trial court, in an exercise of discretion, determined the evidence was questionable and chose not to use it in the fee calculations. Finally, we do not find that Intervenors' appeal fails for lack of citations to authority, as the issue raised by Intervenors is largely one of equity and discretion arising from our previous decision in *Community Care Centers*. Therefore, we decline to award damages in favor of Class Counsel.

III. Pre- and Post–Judgment Interest

### A. Standard of Review

█ When the trier of fact determines liability for damages exists, prejudgment interest is proper only where a simple mathematical computation is required; it is not proper when the court must determine the value of the liability. *Thomas J. Henderson, Inc. v. Leibowitz*, 490 N.E.2d 396, 400 (Ind.Ct.App.1986).

### B. No Error in Interest Award

The trial court awarded Class Counsel pre-judgment interest from September 22, 1999, the date of this court's opinion in *Community Care Centers*, until the present. Class Counsel argues the trial court erred in not allowing post-judgment interest on the attorney fee award from March 31, 1997, until the present.[7] In the alternative, Class Counsel argues that interest should have been awarded as "pre-judgment interest" beginning on March 31, 1997. Intervenors argue that the trial

court did not err in not awarding post-judgment interest and that the trial court erred in allowing any pre-judgment interest at all.

█ We first consider whether the trial court erred in finding Class Counsel was not entitled to post-judgment interest. The trial court found as follows regarding post-judgment interest in its order dated March 6, 2001:

Class counsel is not entitled to post judgment interest on the attorney fees award. The effect of the reversal and remand order from the Court of Appeals restored the parties to the position they held before the Judgment was pronounced. The parties must resume their places in the trial court at the point where the error occurred and proceed to decision … As such, Class counsel may not calculate interest on the attorney fee award prior to September 22, 1999, the date of the remand order.

Appellant's Appendix at A–8. It is well settled that a trial court's judgment that has been reversed is a nullity, and a reversal returns the parties to the position they occupied prior to the judgment. *Reese v. Reese*, 696 N.E.2d 460, 463 (Ind.Ct.App. 1998). However, this court did not reverse the trial court's judgment of March 31, 1997; rather, we remanded the matter to the trial court with instructions to redistribute attorney fees in proportion to tangible benefits received. In fact, we stated that "as Intervenors failed to establish prejudice with regard to their discovery claim, we find no basis for reversal." *Community Care Centers*, 716 N.E.2d at 555.

Class Counsel argues that since there was no reversal, interest should accrue from the date of the previous judgment,

7. March 31, 1997, is the date of the trial court's previous order allocating fees; we remanded that matter to the trial court for reallocation of the fee award in our *Community Care Centers* decision on September 22, 1999.

namely March 31, 1997. Indiana Code section 24–4.6–1–101 provides that:

> Except as otherwise provided by statute, interest on judgments for money whenever rendered shall be from the date of the return of the verdict or finding of the court until satisfaction at ... an annual rate of eight percent (8%) if there was no contract by the parties.

We have previously explained the purpose of the post-judgment interest statute as follows:

> [I]t has been the intention of the law in this State for nearly 25 years that there should be an incentive on the part of judgment debtors to satisfy expeditiously their debt obligations to avoid this accrual of interest. The incentive begins on the day that a money judgment is entered by the trial court as the interest immediately begins accruing. This obligation to pay post-judgment interest is part and parcel of the obligation to pay a money judgment, and those finding themselves on the wrong side of the law after trial must decide whether to limit their liability and pay up or risk incurring further liability in the form of accruing interest if not successful on appeal.

*Poehlman v. Feferman,* 717 N.E.2d 578, 583 (Ind.1999).

The practical effect of this court's ruling in *Community Care Centers* was that the trial court had to reconsider the entire fee division, as this court found the amount of fees awarded was acceptable while the method used for dividing those fees was not. Therefore, although the trial court's order was not reversed, it was impossible for the individual providers to know their exact fee obligations until after the trial court's reapportionment, as that reallocation might well change the individual obligations. It was thus not improper for the trial court to deny the award of post-judgment interest from the date of the previous order. The date of the court's current finding in this case is March 6, 2001; post-judgment interest would begin to accrue after that date. However, as the trial court awarded pre-judgment interest beginning before that date, the interest award need not be duplicated by an award of post-judgment interest.

 The trial court allowed Class Counsel recovery of interest as follows: "Class counsel is further entitled to pre-judgment interest of 8% per annum calculated from September 22, 1999 on each Judgment." Appellants' Appendix at A–9. We have previously determined that:

> The true test to be applied as to whether interest should be allowed before judgment in a given case or not is, therefore, not whether the damages are unliquidated or otherwise, but whether the injury and consequent damages are complete and must be ascertained as of a particular time and in accordance with fixed rules of evidence and known standards of value, which the court or jury must follow in fixing the amount, rather than be guided by their best judgment in assessing the amount to be allowed for past as well as future injury, or for elements that cannot be measured by any fixed standards of value.

*Eden United, Inc. v. Short,* 653 N.E.2d 126, 133 (Ind.Ct.App.1995), *trans. denied.* In this case, the "consequent damages" are the total fees owed to Class Counsel. That amount was fixed and certain at the time this court remanded the matter to the trial court. The only matter remaining upon remand was a reallocation of those fees among class members. Therefore, the trial court did not err, as Intervenors suggest, in awarding pre-judgment interest on that amount from the date of this court's order in *Community Care Centers.*

However, we disagree with Class Counsel's assertion that "[b]ecause it was first possible for the trial court to ascertain the

amount of attorney fees per class member on March 31, 1997, interest should flow from that date at the rate of eight percent *per annum.*" Brief of Appellees at 19. While it is true that this court did not disturb the amount of fees awarded on appeal, we do not agree that pre-judgment interest was ascertainable for each individual class member on March 31, 1997, as that fee allocation resulted from an exercise of discretion, and the fee allocation could have been, and in fact was, altered on appeal. Therefore, the trial court did not err in awarding prejudgment interest beginning after this court's September 22, 1999, holding.

### Conclusion

We hold that the trial court did not err in not including per diem reimbursements in its allocation of attorney fees among class members. We also hold that Class Counsel is not entitled to appellate attorney fees, and the trial court did not err in its award of pre-judgment interest.

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.