Patrick BERGERSON and Patrice
Bergerson, Appellants–
Plaintiffs,

v.

Michael BERGERSON, Appellee–
Defendant.

No. 46A03–0802–CV–70.

Court of Appeals of Indiana.

Oct. 31, 2008.

Hugo E. Martz, Martz & Boyles, Valparaiso, IN, Attorney for Appellant.

Michael S. Bergerson, Law Office of Michael S. Bergerson, Michigan City, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Patrick and Patrice Bergerson appeal the denial of their claim for damages arising out of a landlord-tenant relationship with Michael Bergerson. We affirm the judgment, and we deny Michael's claim for appellate attorney fees.

## FACTS AND PROCEDURAL HISTORY

In 2001, Patrick and Patrice located a house they wanted to buy but could not afford. They approached Patrick's brother, Michael, for assistance. Michael agreed to purchase the house, rent it to Patrick and Patrice for five years, and give them an option to purchase. Michael, an attorney, drafted a "Lease with Option to Purchase," (Appellants' App. at 47), which the parties signed on October 1, 2001. Paragraph 19 of the lease governed the option to purchase:

> So long as the Lessee is not in substantial default in the performance of any terms of this lease, Lessee shall have the option to purchase the real property described herein for a purchase price of **ONE HUNDRED THIRTY–FIVE THOUSAND ($135,000.00) DOLLARS.**

(*Id.* at 50) (emphasis in original). Patrick and Patrice paid a security deposit of $10,000, which was not mentioned in the lease or any other written agreement.

In February 2003, Michael released $5,000 from the security deposit to Patrick and Patrice so that they could purchase a vehicle. In 2004, Patrick and Patrice did not make some of their rent payments, and Michael paid himself from their security deposit. When Patrick and Patrice failed to pay rent in September and October, Michael sent them the following letter dated October 11, 2004:

> Rent is now past due for September and October and I consider your failure to pay a *substantial default* of the terms of the lease agreement.
>
> Your continued possession will be on a month-to-month basis with rent continuing to be due on the 1st day of each month in the amount of $1,000.00 per month.

(*Id.* at 53) (emphasis in original).

Thereafter, Patrick and Patrice made some rent payments, and Michael contin-

ued to pay himself from the security deposit when they did not make a payment. In a letter dated September 1, 2005, Michael informed Patrick and Patrice that the balance of the security deposit was $820.00, which was insufficient to cover that month's rent. According to Michael's records, Patrick and Patrice paid the September rent a few days later. They paid rent in October and November, although the October payment was late. On November 21, 2005, Patrick and Patrice attempted to exercise the option to purchase.

Michael refused to honor the option, and Patrick and Patrice continued to rent the house on a month-to-month basis. Patrick and Patrice filed suit against Michael on March 7, 2006. Count 1 alleged breach of contract, Count 2 alleged anticipatory breach of contract, Count 3 alleged breach of fiduciary duty, and Count 4 alleged estoppel. Michael filed a counterclaim, alleging Patrick and Patrice had failed to pay rent and late fees and had assigned the lease without consent.

On January 2, 2007, Patrick and Patrice filed a motion for partial summary judgment on Counts 1, 2, and 4. Michael filed a cross-motion for summary judgment. On May 4, 2007, the trial court issued its ruling:

1. This court has subject matter jurisdiction over that general class of proceedings to which this cause of action belongs.

2. Hearing was held the 16th day of April, 2007. Patrick Bergerson and Patrice Bergerson each appeared in person and by Counsel Hugo Martz.

3. There are no issues of material fact.

4. Defendant is entitled to judgment as a matter of law.

5. Plaintiff's Motion for Partial Summary Judgment should be denied.

WHEREFORE, IT IS ORDERED and ADJUDGED that judgment be, and it is hereby entered against plaintiffs, Patrick and Patrice Bergerson, and in favor of Michael Bergerson on the Complaint filed herein.

IT IS FURTHER ORDERED AND ADJUDGED that plaintiff's motion for partial summary judgment be, and it is hereby, denied.

IT IS FURTHER ORDERED and ADJUDGED that the question whether defendant owes any reimbursement of funds to plaintiffs is reserved for determination at a further date, if necessary.

IT IS FURTHER ORDERED AND ADJUDGED, however, that no just reason for delay exists with respect to the judgment granted herein, as well as the denial of the plaintiff's motion for partial summary judgment and expressly directs entry of judgment thereon as final and appealable judgments.

(*Id.* at 151–52.)

Patrick and Patrice moved out of the house on June 16, 2007. On November 19, 2007, they filed a "Motion for Clarification of May 4, 2007 Judgment and Motion for Hearing on Reimbursement of Funds." (*Id.* at 3.) The trial court held a hearing on those motions on November 28, 2007. When Patrick began to testify concerning who had found the house, a dispute arose as to the purpose of the hearing:

MR. [MICHAEL] BERGERSON: Your Honor, I'm going to object in terms of finding—the issue of the relevance of finding this home. It's already been litigated. We've had a motion for summary judgment.... It's res judicata. I thought we were here on motion for either reimbursement of funds or for clarification of the judgment.

THE COURT: Mr. Martz?

MR. MARTZ: ... [M]y understanding was that the reimbursement includ-

ed damages, and that aspect has never been litigated. . . .

THE COURT: When you say damages, what are you talking about?

MR. MARTZ: . . . The issues are whether or not they're entitled to return of any portion or all of the security deposit, whether or not they're entitled to improvements that were made to the premises, and whether or not they're entitled to any of the equity. And also the issue of attorney's fees. . . .

THE COURT: Mr. Bergerson?

MR. [MICHAEL] BERGERSON: . . . Our position, your Honor, would be that the—that the judgment is entirely consistent with the circumstances that the Court found at the time. That being in May of 2007, when the Court issued its judgment, Pat and Patrice were still tenants on the property. They were still occupying the property. And until such time as they vacated the property post judgment, there would be—it would be impossible to assess any request for reimbursement of the security deposit, if any, or of any other damages that I may have as the owner of the property. It's our position that the—those issues related to equity, improvements, even attorney's fees, Judge, are foreclosed at this point because . . . the judgment of the Court is the judgment of the Court. There's been no appeal taken. Plaintiffs are merely attempting to re-litigate those issues, your Honor, to potentially perfect some appeal.

THE COURT: The objection is overruled. Let's get going.

(Tr. at 32–35.) The Court then heard evidence, which primarily related to im-provements made to the home by each party.

On December 20, 2007, the trial court issued an order denying Patrick and Patrice's claim for reimbursement without making findings of fact or conclusions of law. On January 18, 2008, Patrick and Patrice filed a notice of appeal from the May 4, 2007 and December 20, 2007 judgments. Michael moved this Court to dismiss the appeal as untimely. We granted the motion as to the May 4, 2007, finding "the judgment was a final judgment pursuant to Ind. Trial Rule 56(C), and Patrick and Patrice failed to file their Notice of Appeal within thirty (30) days of May 4, 2007." (Appellee's App. at 2.)

## DISCUSSION AND DECISION

### A. Scope of May 4, 2007 Order

To determine which issues are available for this appeal, it is necessary to first determine the scope of the trial court's May 4, 2007 order. Patrick and Patrice argue the order resolved only the issue of liability and not relief; therefore, it did not dispose of at least one substantive claim and was not certifiable as a final, appealable order.[1] See Ramco Indus., Inc. v. C & E Corp., 773 N.E.2d 284, 289 (Ind.Ct.App.2002) (trial court should not have certified order as final and appealable because it established only the defendant's liability for breach of contract and reserved for future trial the issue of damages); Troyer v. Troyer, 686 N.E.2d 421, 424–25 (Ind.Ct.App.1997) (trial court should not have certified order as final and appealable because it interpreted aspects of antenuptial agreement without making a

---

**1.** Patrick and Patrice are not precluded from presenting this argument because we may reconsider a ruling by the motions panel. *Cincinnati Ins. Co. v. Young*, 852 N.E.2d 8, 12 (Ind.Ct.App.2006), *trans. denied* 869 N.E.2d 450 (Ind.2007). However, we will decline to reverse its decision in the absence of clear authority establishing that it erred as a matter of law. *Id.*

complete determination of how assets would be divided).

Patrick and Patrice note the May 4, 2007 order explicitly denies their motion for partial summary judgment, but does not explicitly grant Michael's cross-motion for summary judgment. However, the order states there are "no issues of material fact" and "Defendant is entitled to judgment as a matter of law." (Appellants' App. at 151.) This was a grant of Michael's motion, which grant was qualified: "[T]he question whether defendant owes any reimbursement of funds to plaintiffs is reserved for determination at a further date, if necessary." (*Id.* at 152.)

Neither party has supplied us with a copy of Michael's motion, which may have been helpful in determining the scope of the trial court's judgment.[2] However, the undisputed facts provide guidance. On October 11, 2004, Michael sent Patrick and Patrice a letter stating rent for September and October was past due, he considered this a substantial default, and they would be month-to-month tenants. On November 21, 2005, Patrick and Patrice attempted to exercise the option, but Michael refused to honor it. According to Michael's records, Patrick and Patrice had missed some payments, but those payments were fully covered by the security deposit. Patrick and Patrice assert they "made rent payments in a timely fashion, either by paying them directly ... to Michael ... or by expressly permitting Michael to use funds from the security deposit." (*Id.* at 106, 108.)

According to the evidence designated by both parties, as of October 11, 2004 and November 21, 2005, Michael had been paid either directly or from the security deposit. Michael's position was that the security deposit was not "prepaid rent," and if Patrick and Patrice did not pay him directly, they were delinquent. The lease did not provide for rent payments to be made from the security deposit; therefore, according to Michael, their failure to pay him directly was a breach of the lease rising to the level of a "substantial default" that excused him from honoring the option. According to Patrick and Patrice, the purpose of the security deposit was to cover any damage Michael may have, including unpaid rent. Therefore, they argued, as long as the security deposit had a balance large enough to cover the rent due, they were not delinquent or in breach of the lease.

By granting summary judgment for Michael and denying summary judgment for Patrick and Patrice, it appears the trial court adopted Michael's interpretation of the lease. It determined Patrick and Patrice, and not Michael, breached the lease and their breach was a "substantial default" excusing Michael from honoring the option. Accordingly, Patrick and Patrice could not be entitled to damages premised on their theory that Michael breached the lease, and the trial court properly certified the May 4, 2007 order as a final, appealable order.[3] Patrick and Patrice did not appeal and cannot now argue the trial court's interpretation of the lease was erroneous or Michael breached the lease.

### B. Relief Sought by Patrick and Patrice

Patrick and Patrice argue they are entitled to: (1) the difference between the market value of the house and the option

---

2. Nor were we provided with a transcript of the April 16, 2007 hearing at which the trial court heard arguments on the summary judgment motions.

3. Michael may have been entitled to damages; however, he did not pursue his counterclaim.

price; (2) their entire security deposit, plus costs and fees; (3) an accounting; (4) the value of improvements they made to the house; (5) damages for Michael's wrongful acts; and (6) attorney fees.

■ Patrick and Patrice appeal from a general judgment. "A general judgment will be affirmed if it can be sustained upon any legal theory consistent with the evidence." *Shelby Engineering Co., Inc. v. Action Steel Supply, Inc.*, 707 N.E.2d 1026, 1027 (Ind.Ct.App.1999). We will not reweigh the evidence or judge the credibility of witnesses. *Id.* We consider the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *Id.*

### 1. *Difference between Market Value and Option Price*

Patrick and Patrice argue they are entitled to the difference between the market value of the house and the option price because they lost the benefit of the bargain. However, the trial court determined they substantially breached the lease, and Michael could refuse to honor the option. Patrick and Patrice cannot now argue they are entitled to damages based on his refusal.

### 2. *Security Deposit*

■ Patrick and Patrice argue they are entitled to a return of their entire $10,000 security deposit due to Michael's failure to comply with Ind.Code § 32–31–3–12, which provides in relevant part:

(a) Upon termination of a rental agreement, a landlord shall return to the tenant the security deposit minus any amount applied to:

(1) the payment of accrued rent;

(2) the amount of damages that the landlord has suffered or will reasonably suffer by reason of the tenant's noncompliance with law or the rental agreement; and

(3) unpaid utility or sewer charges that the tenant is obligated to pay under the rental agreement;

all as itemized by the landlord with the amount due in a written notice that is delivered to the tenant not more than forty-five (45) days after termination of the rental agreement and delivery of possession. The landlord is not liable under this chapter until the tenant supplies the landlord in writing with a mailing address to which to deliver the notice and amount prescribed by this subsection. Unless otherwise agreed, a tenant is not entitled to apply a security deposit to rent.

(b) If a landlord fails to comply with subsection (a), a tenant may recover all of the security deposit due the tenant and reasonable attorney's fees.

Patrick and Patrice claim Michael has never provided them with an itemized notice.

In January 2007, Michael designated evidence that included an "Accounting for Rental Payments." [4] (Appellee's App. at 13.) This document gave a month-by-month breakdown of the amount of rent received (if any), the date it was received, and the balance of the security deposit from the commencement of the lease through December 2005. According to Michael's accounting, the balance of the security deposit was $820.00 as of December 2005. Michael's designation of evidence

4. The CCS does not reflect when Michael's cross-motion was filed. Neither party has submitted a copy of Michael's motion. According to the trial court's ruling on the motions, both motions were filed on January 2, 2007. (*See* Appellants' App. at 151.) Patrick and Patrice assert Michael's motion was filed January 30, 2007. (*See* Appellants' Br. at 3 n. 2.)

also contained a letter dated October 5, 2006, stating that Patrick and Patrice's payment for that month was short by $470.00, and the security deposit had been reduced to $350.00. A letter dated November 1, 2006 stated their payment was again short by $470.00, and the security deposit had been reduced to zero.

Therefore, Patrick and Patrice were fully apprised at least by January 2007 of Michael's position regarding the security deposit.[5] Patrick and Patrice continued to reside in the house and rent from Michael on a month-to-month basis until June 2007.

Patrick and Patrice contend the lease terminated either on October 11, 2004, when Michael sent the letter stating they were in substantial default, or September 30, 2006, when the written lease agreement expired. Section 18 of the lease, titled "Remedies of Owner on Default," states:

> In the event of any breach of this lease [by] Lessee, Lessor may, at his option, terminate the lease and recover [specified types of damages]. Lessor may, in the alternative, continue this lease in effect, as long as Lessor does not terminate Lessee's right to possession, and Lessor may enforce all his rights and remedies under the lease, including the right to recover the rent as it becomes due under the lease. If said breach of

lease continues, Lessor may, at any time thereafter, elect to terminate the lease. Nothing contained herein shall be deemed to limit any other rights or remedies which Lessor may have.

(Appellants' App. at 49–50.) The October 11, 2004 letter stated that Michael considered Patrick and Patrice to be in substantial default, but Michael did not elect to terminate the lease at that time. Instead, he allowed Patrick and Patrice to remain in possession and continued to charge them $1,000 per month, pursuant to the terms of the lease. The lease expired on September 30, 2006 and Patrick and Patrice continued to rent the house on a month-to-month basis. Section 23 of the lease addressed holdover tenancy: "Any holding over after the expiration of this lease, with the consent of Lessor, shall be construed as a month-to-month tenancy at a rental of $1,470.00 per month, otherwise in accordance with the terms hereof, as applicable." (*Id.* at 50.) Therefore, Patrick and Patrice had one continuous tenancy from October 2001 to June 2007, all governed by the terms of the lease.

We conclude the rental agreement did not terminate until June 2007. By then, Patrick and Patrice had been fully informed in writing of how Michael had used the security deposit and that he believed the balance to be zero.[6] Michael complied

---

5. This may not be a typical manner for a landlord to provide notice to his tenants; however, Patrick and Patrice argue Michael should have sent an itemized notice to their attorney because the parties were engaged in litigation. Since it appears he did just that, we find no fault therein.

6. Again, it may be unusual for a landlord to provide notice prior to the termination of the rental agreement. Ind.Code § 32–31–3–12 states the landlord must provide notice "not more than forty-five (45) days after termination of the rental agreement," but nothing in that section states that notice cannot be

given prior to termination of the rental agreement. Nor is early notice inconsistent with the purpose of the statute:

> The primary purpose of this statute is to equalize a bargaining position that the legislature deemed unbalanced. The purpose of these provisions is to provide for the timely return of the tenant's security deposit and to protect the tenant from wrongful withholding of the deposit by the landlord. The notice requirements are intended to inform a tenant as to what specific damages or liability claims the landlord is attempting to offset against the tenant's deposit.

with Ind.Code § 32–31–3–12, and Patrick and Patrice are not entitled to recover their security deposit, costs, or attorney fees pursuant to that section.

### 3. Accounting

For the reasons stated above, an accounting is not necessary. Patrick and Patrice claim Michael still has a portion of their security deposit, but they presented no evidence contrary to Michael's accounting. The trial court did not err when it declined to order an accounting or award any portion of the security deposit to Patrick and Patrice.

### 4. Improvements

 Paragraph 7 of the lease made Patrick and Patrice responsible for maintenance and repair of the house. Paragraph 15 governed improvements:

> Any and all improvements made to the premises during the term hereof shall belong to the Lessor, except trade fixtures of the Lessee. Lessee may, upon termination hereof, remove all his trade fixtures, but shall repair or pay for all repairs necessary for damages to the premises occasioned by removal[.]

(Appellants' App. at 49.) Patrick and Patrice do not argue that the improvements they made were trade fixtures. They argue they had an oral contract "that went well beyond ¶¶ 7 and 15 of the Lease." (Appellants' Br. at 17.)

> The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. If the language of the instrument is unambiguous, the intent of the parties is determined from the four corners of that instrument. If, however, a contract is

*Lae v. Householder,* 789 N.E.2d 481, 485 (Ind. 2003) (citations omitted). Providing notice prior to the termination of the rental agreement does not harm the tenant and serves the

ambiguous or uncertain, its meaning is to be determined by extrinsic evidence and its construction is a matter for the fact finder.

*Peoples Bank & Trust Co. v. Price,* 714 N.E.2d 712, 716 (Ind.Ct.App.1999) (citations omitted), *trans. denied* 726 N.E.2d 313 (Ind.1999).

Patrick and Patrice argue:

> In the instant case, the Trial Court has already admitted evidence extrinsic to the contract on the issue of improvements, including a chart documenting the improvements made by Patrick and Patrice as well as hearing testimony regarding the improvements. The fact that the Trial Court permitted such evidence and that [Michael] did not object to it being offered is a tacit admission that the Lease with Option to Purchase is ambiguous with respect to improvements, because when a contract is clear, there is no need to examine evidence other than the contract to resolve the issue.

(Appellants' Br. at 17–18) (citations omitted).

We disagree. First, Michael did object to evidence about improvements. (Tr. at 33–35.) Second, Patrick and Patrice made an alternative argument that they were entitled to recover under an estoppel or unjust enrichment theory. The evidence concerning the improvements was relevant to those arguments, and its admission does not signify agreement by Michael or the trial court that the lease was ambiguous. Patrick and Patrice do not identify any portion of Paragraphs 7 or 15 that is ambiguous. The lease is not ambiguous; it states plainly that improvements other

statute's purposes of facilitating timely return of the security deposit and providing information to the tenant.

than trade fixtures would belong to Michael, and Patrick and Patrice's argument that there was an oral agreement fails.

▌ Patrick and Patrice argue they are entitled to the value of the improvements based on an estoppel or unjust enrichment theory. The elements of promissory estoppel are:

> (1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise.

*Brown v. Branch,* 758 N.E.2d 48, 52 (Ind. 2001).

Patrick and Patrice argue they relied on the option and their position that Michael said: "[T]he house is yours, do as you like." (Tr. at 36.) According to the plain terms of the option, Patrick and Patrice could exercise the option only if they were not in substantial default. Nothing in the option could lead them to believe they were entitled to keep improvements if they breached the lease.

Patrick testified they never sought Michael's permission prior to making improvements, because Michael "always said the house is yours, do as you like." (*Id.*) He testified they made improvements because "[e]verybody when they think they're going to own a home likes to make it to their satisfaction." (*Id.* at 35.) Michael testified Patrick and Patrice had asked him before making improvements, he had approved some and denied others, and he did not remember saying "the house is yours, do as you like." The trial court was not required to believe Michael told Patrick and Patrice the house was theirs. Nor was it required to believe Patrick and Patrice relied on such a state-ment rather than their expectation they would exercise their option.

▌ We turn next to Patrick and Patrice's unjust enrichment argument.

Even if there is no express contract, a plaintiff may sometimes recover under the theory of unjust enrichment, which is also called *quantum meruit,* contract implied-in-law, constructive contract, or quasi-contract. These theories are "legal fictions invented by the common law courts in order to permit recovery where in fact there is no true contract, but where, to avoid unjust enrichment, the courts permit recovery of the value of the services rendered just as if there had been a true contract."

\*　　\*　　\*　　\*　　\*　　\*

▌ "A party seeking to recover on a theory of *quantum meruit* must demonstrate that a benefit was rendered to another at the express or implied request of such other party." The plaintiff must also demonstrate that to allow the defendant to retain the benefit without paying for it would be unjust and that the plaintiff expected payment.

*Kelly v. Levandoski,* 825 N.E.2d 850, 860–61 (Ind.Ct.App.2005) (citations omitted), *trans. denied* 841 N.E.2d 179 (Ind.2005).

According to Patrick, they never asked Michael whether they could make improvements; therefore, they have not established that the improvements were made at Michael's express or implied request. Furthermore, it is not unjust for Michael to keep the improvements, because the contract explicitly provided the improvements would belong to Michael. Patrick and Patrice presented no evidence they expected to be paid for making improvements. Patrick and Patrice may have hoped they would someday exercise the option and be able to retain the benefit of the improvements they made, but they

have not established Michael was unjustly enriched.

### 5. *Michael's Wrongful Acts*

Patrick and Patrice argue they are entitled to damages for Michael's wrongful acts. They appear to be requesting punitive damages for Michael

> breaching the Lease with Option to Purchase by refusing to allow Patrick and Patrice to exercise said option, declining to return their "security deposit" or issue an itemized list within 45 days as required by the Security Deposit Statute, and possibly commingling his personal funds with ... "security deposit" funds.

(Appellants' Br. at 41.)

The trial court determined on summary judgment that Michael did not breach the lease, and we have determined that he gave a proper accounting of the security deposit. Patrick and Patrice argue Michael could not commingle the security deposit with his personal funds, arguing Comment 1 of Ind. Rule of Professional Conduct 1.15 suggests a lawyer acts as a fiduciary anytime he holds property of others.

■■■ Even if we adopted Patrick and Patrice's interpretation of Prof. Cond. R. 1. 15, their claim fails. Punitive damages

> may be awarded only if there is clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error [of] judgment, overzealousness, mere negligence, or other human failing.

*Foster v. Evergreen Healthcare, Inc.,* 716 N.E.2d 19, 24 (Ind.Ct.App.1999), *trans. denied* 735 N.E.2d 223 (Ind.2000). Punitive damages may not arise in the absence of an injury; a party must establish actual damages before punitive damages may be awarded. *Id.* at 27. The only evidence on this issue was Michael's testimony that he did not remember where he had deposited the funds. Patrick and Patrice did not establish by clear and convincing evidence that Michael actually commingled funds and did so with malice, fraud, gross negligence or oppressiveness. Nor have they made any argument that they would be entitled to actual damages.

### 6. *Attorney Fees*

Patrick and Patrice argue they are entitled to attorney fees pursuant to the terms of the lease, Ind.Code § 32–31–3–12 (security deposit), or Ind.Code § 34–52–1–1 (litigation that is frivolous, unreasonable, groundless, or in bad faith). Because they have not prevailed on any of their claims, we cannot say they are entitled to attorney fees.

### C. *Appellate Attorney Fees*

■■■ Michael requests appellate attorney fees pursuant to Ind. Appellate Rule 66(E), which provides in pertinent part, "The Court may assess damages if an appeal ... is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Michael argues Patrick and Patrice's appeal is both frivolous and in bad faith.

■■■ "We may award appellate attorney fees when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Tioga Pines Living Center, Inc. v. Ind. Family & Social Servs. Admin.,* 760 N.E.2d 1080, 1087 (Ind.Ct.App.2001), *aff'd on reh'g* 763 N.E.2d 1032 (Ind.Ct.App. 2002), *trans. denied* 774 N.E.2d 517 (Ind. 2002).

Indiana appellate courts have formally categorized claims for appellate attorney

fees into "substantive" and "procedural" bad faith claims. To prevail on a substantive bad faith claim, the party must show that the "appellant's contentions and argument are utterly devoid of all plausibility." Procedural bad faith, on the other hand, occurs " 'when a party flagrantly disregards the form and content requirements of the Rules of Appellate Procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court.' " *Boczar v. Meridian Street Foundation,* 749 N.E.2d 87, 95 (Ind.Ct.App.2001) (citations omitted). We use extreme restraint when exercising our discretionary power to award damages because of the potential chilling effect on the exercise of the right to appeal. *Tioga Pines,* 760 N.E.2d at 1087. A strong showing is required to justify an award of appellate damages. *Id.*

The thrust of Michael's argument is that Patrick and Patrice have continued to litigate issues foreclosed by the May 4, 2007 ruling. Michael understands that ruling to have decided all issues except for the security deposit. Patrick and Patrice, however, have argued that the order was internally inconsistent and left open all damage issues. They requested clarification of the order, which Michael argued against, and their motion was not granted.[7]

We have concluded the trial court ruled Patrick and Patrice were in substantial default of the lease, but its order is not a model of clarity, and we cannot say Patrick and Patrice's interpretation of it was de-

void of plausibility. Clarification of the earlier order may have helped the parties frame their arguments for appeal. This appeal is marked with the bitterness typical of family disputes, but we do not believe Michael has made a strong showing that the appeal was frivolous or in bad faith.

The judgment of the trial court is affirmed, and Michael's request for appellate attorney fees is denied.

Affirmed.

ROBB, J., and NAJAM, J., concur.

---

7. The Appellants' Appendix contains a document titled "Denial of Motion to Clarify Judgment and Briefing Schedule Re: Motion for Reimbursement of Funds," which appears to be signed by Judge King and dated November 28, 2007. (Appellants' App. at 157–58.) The order is not file-stamped and the chronological case summary makes no reference to any ruling on the motion to clarify; however, there appears to be no dispute that Judge King did not grant the motion.