EDEN UNITED, INC., BFC Financial Corporation f/k/a Bankatlantic Financial Corporation f/k/a I.R.E. Financial Corporation, I.R.E. Investments, Inc., I.R.E. Properties, Inc., and Eden Services, Inc., Appellants (Defendants Below),

v.

Frank M. SHORT, Trustee, Appellee (Plaintiff Below).

No. 49A04–9406–CV–245.

Court of Appeals of Indiana.

July 7, 1995.

Rehearing Denied Sept. 5, 1995.

Eugene Stearns, Bradford Swing, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Miami, FL, and Joseph H. Yeager, Jr., James M. Matthews, and Scott D. Himsel, Baker & Daniels, Indianapolis, for appellants.

Stephen R. Buschmann, Buschmann, Carr & Shanks, P.C., Indianapolis, for appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Eden United, Inc., BFC Financial Corporation formerly known as Bankatlantic Financial Corporation formerly known as I.R.E. Financial Corporation, I.R.E. Investments, Inc., I.R.E. Properties, Inc., and Eden Services, Inc. ("Eden") appeal the judgment against them in favor of Frank M. Short.

We affirm conditionally or remand in part and reverse in part.

### ISSUES [1]

1. Whether the award of $2,570,000 for lost profits is erroneous.

---

1. In framing these issues, we note that the appellants' articulation of issues is confusing: their Statement of the Issues identifies six issues; their Argument discusses eight.

2. Whether the award of prejudgment interest is erroneous.

3. Whether the post-judgment interest awarded is at an erroneous rate and bears an erroneous effective date.

4. Whether the award should be discounted to its 1981 present value.

*FACTS* [2]

This is the second appeal in this case. The original was heard by this court in *Eden United, Inc. v. Short* (1991), Ind.App., 573 N.E.2d 920, *reh'g denied, trans: denied.*

Frank M. Short is a Texan who in 1980 owned and managed about twenty apartment complexes with about 3,000 units. Eden United, Inc., BFC Financial Corporation formerly known as Bankatlantic Financial Corporation formerly known as I.R.E. Financial Corporation, I.R.E. Investments, Inc., I.R.E. Properties, Inc., and Eden Services, Inc. are Florida corporations.[3] Short brought an action against Eden for breach of contract and tortious interference with a contractual relation. The facts giving rise to Short's claims are described at length in *Eden, supra,* and involve an attempted sale of the Eastwind Village Apartments, a 461 unit complex in Indianapolis. Eastwind was owned by Chatlee Realty Corporation. As planned, the 1981 transaction contemplated Chatlee's selling Eastwind to Eden; Eden would then sell the property to Short; Short would then sell the property in two undivided half interests to limited partnerships syndicated by Barton Schuman, a California syndicator. Short and Schuman had previously completed fifteen syndications of apartment complexes owned by Short and sold to limited partnerships created by Schuman.

A bench trial was conducted from October 11 through October 26, 1988. The trial court issued judgment on May 12, 1989, holding that: 1) Eden had breached its contract with Short on September 1, 1981; 2) Short should recover the $85,000 liquidated damages provided for in the Eden–Short contract; and 3) while Short had a direct contractual right to close with Chatlee under the terms of the Short–Eden contract, Eden had tortiously interfered with efforts of Short and Chatlee to directly consummate the sale of Eastwind. The judgment also awarded Short $100,000 as punitive damages.

Upon the parties' initial appeals of that decision, we reviewed a record consisting of nearly 4,000 pages of transcript and 4,000 pages of exhibits. We "affirm[ed] the judgments" but "reverse[d] the trial court's ruling on compensatory damages" awarded Short for Eden's commission of the tort. *Eden, supra* at 922. The trial court had held that because Short failed to establish the entire lost profits to a reasonable degree of certainty, only nominal damages were appropriate. We affirmed that "[t]he trial court's findings leave no doubt that Short met the tougher burden of certainty facing him on the issue of damages; that is, Short was able to demonstrate that profits had in fact been lost." *Id.* at 928. We observed that evidence in the record could "support profit on the sale of the whole property ... in the $2.5 million range." *Id.* at 929. We agreed with "the trial court's determination that lost profits on the [aborted] sale were too speculative ... insofar as it relate[d] to lost profit on the operation of Eastwind," but we found "damages [were] however calculable with reasonable certainty with respect to profit from the sale itself." *Id.* Accordingly, we remanded for an award of "compensable damages" to be "determined from the evidence of record on remand." *Id.*

---

2. We bring to appellants' attention the "numerous decisions of Indiana's appellate courts" which describe Ind.Appellate Rule 8.3(A)(5) as requiring a Statement of Facts be "a concise narrative of facts, stated in the light most favorable to the judgment" and not argumentative in style. *FMC Corp. v. Brown* (1988), Ind.App., 526 N.E.2d 719, 724 n. 1., *aff'd* (1990), Ind., 551 N.E.2d 444.

3. Eden United, I.R.E. Investments, I.R.E. Properties and Eden Services were found by the trial court to be corporate instrumentalities of Financial Corporation and "used ... on an interchangeable basis to conduct its activities in this transaction." (R. 1367). Financial Corporation was the holding company of a federal savings bank and in the 1970's began acquiring real estate developments "from banks that had foreclosed on them or banks that needed help with work outs." (R. 684).

On remand, Short and Eden waived an evidentiary hearing on damages and agreed to stipulate relevant parts of the record. The parties submitted 970 pages of transcript and extensive briefs (with lengthy appendices) to the remand court. Oral argument was heard February 3, 1993. On February 25, 1994, the remand court entered judgment with findings of fact and conclusions of law. The court found as fact that "Short would make a profit anywhere from $2,010,000.00 to better than $5 million on the resale for syndication." (R. 1556). The court then held "Short's proof of his anticipated resale to Schuman is as certain as can reasonably be expected under the circumstances" and concluded that "[t]he evidence supports an award of $2,570,000 to Short from Eden United to compensate Short for the profits he lost by reason of Eden United's tortious interference." (R. 1557–58). To the judgment of $2,570,000 for tortious interference, "prejudgment interest . . . through May 1, 1989, the date of entry of this Court's original judgment," and "post judgment interest of 10% from May 1, 1989 until paid" were to be added. (R. 1561).

## DISCUSSION AND DECISION

### 1. Damages Award

■ Eden's initial challenge to the damages awarded by the remand court asserts that *Eden, supra,* did not mandate a damages award in the $2.5 million range, as "successfully" argued by Short, but rather that *Eden* mandated entry of "a compensatory damages award based on all the evidence of record." Appellants' Brief at 17. Appellate review rests upon a presumption "in favor of the rulings of the trial court" and "the regularity of the proceedings of the trial court." *Shugart v. Miles* (1890), 125 Ind. 445, 25 N.E. 551, 554. *See, also Miller v. Cook* (1891), 127 Ind. 339, 26 N.E. 1072, 1073 ("presumptions are all in favor of the trial court"). As specified in the FACTS section, the remand court had a wealth of designated evidentiary material before it. True, in his brief to the remand court and at the hearing, Short stressed language in *Eden* indicating that evidence in the record supported profit on the sale being "in the $2.5 million range." By the same token, Eden vigorously argued

that the remand court was required to consider anew all the evidence before it in order to arrive at a damages award figure. The order of the remand court was issued over a year after receipt of the designated evidence and after hearing arguments. Nothing in that order indicates that the remand court's findings as to the profit Short would have made and its conclusion as to Eden's liability for tortious interference resulted from having accepted a specific interpretation of the "mandate" of the Court of Appeals. Accordingly, we presume that the order of the remand court is based upon consideration of the evidence before the court.

■ Eden also denominates as issues whether:

1) the "maximum award of lost profits under the evidence and law of the case is $270,616;"

2) a lost profit award is erroneous because "sale of the second half of Eastwind would have violated" securities laws;

3) the amount of lost profits damages must be reduced by capital expenditures; and

4) the amount of lost profits damages must "credit" Eden for the $85,000 liquidated damages award.

All essentially challenge the damages awarded as excessive. An excessive damages argument "is governed by a strict standard of review." *Wal–Mart Stores, Inc. v. Blaylock* (1992), Ind.App., 591 N.E.2d 624, 628. "When the specific issue on review relates to questions of . . . excessive damages, a damage award should not be reversed if within the scope of the evidence before the trial court, and the reviewing court may not reweigh the evidence or judge the credibility of the witnesses who presented it." *Dunn v. Cadiente* (1987), Ind., 516 N.E.2d 52, 54. "A judgment is not excessive unless the amount cannot be explained upon any basis other than prejudice, passion, partiality, corruption, or some other improper element." *Fowler v. Campbell* (1993), Ind.App., 612 N.E.2d 596, 603.

■ Further, "[i]n tort, all damages directly traceable to the wrong and arising

without an intervening agency are recoverable." *Erie Ins. Co. v. Hickman* (1993), Ind., 622 N.E.2d 515, 519. When the tortious act of appellant created the situation, "all doubts and uncertainties as to the proof of the exact measure of damages must be resolved against it" because " '[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of uncertainty which his own wrong has created.' " *City of Fort Wayne v. Capehart–Farnsworth Corp.* (1957), 127 Ind.App. 412, 142 N.E.2d 442, 448 (quoting *Bigelow v. R.K.O. Radio Pictures, Inc.* (1945), 327 U.S. 251, 264, 265, 66 S.Ct. 574, 579–80, 580, 90 L.Ed. 652, 660). *See, also, Friendship Farms Camps, Inc. v. Parson* (1977), 172 Ind.App. 73, 359 N.E.2d 280; *Stoneburner v. Fletcher* (1980), Ind.App., 408 N.E.2d 545; *Babson Bros. Co. v. Tipstar Corp.* (1983), Ind.App., 446 N.E.2d 11.

■ Thus, while a damage award must be supported by probative evidence, reversal is warranted "only when it is not within the scope of the evidence before the finder of fact." *Fowler, supra* at 603.

■ Finally, we repeat our previous observation that:

[t]he trial court made findings of fact and conclusions of law pursuant to Ind.Trial Rule 52(A). In our capacity as a reviewing court, we will not disturb those findings unless they are clearly erroneous. In making that determination, we do not reweigh evidence or reassess witness credibility. We consider only the evidence and reasonable inferences drawn therefrom that support the trial court's judgment. That judgment will not be altered unless, after a review of the entire record, we have a firm and definite conviction that a mistake has been made. If there is evidence of probative value which will support the judgment, the decision of the trial court will be affirmed.

*Eden, supra* at 924.

Eden's entire "Statement of Facts" is a seven page presentation of evidence contrary to the lost profit award. However, pursuant to the standard of appellate review described above, we examine the record to determine whether there was sufficient evidence before the remand court to support the $2.57 million damage award.

The remand court found as fact that:

– The Short Eden Contract provided for the sale of Eastwind for the principal amount of $6,240,000.

– Short and Chatlee reached an agreement on the financial terms of a contract ... [in which] terms differed slightly from the exact terms of the Short–Eden Contract ... the differences ... [including] the parties' attempts to resolve [*inter alia*] Eastwind's condition....

– Chatlee acknowledged the property's deterioration and was willing to give Short consideration for it.

– Short and Schuman had an agreement which was not reduced to writing, that Short would sell an undivided half interest of Eastwind to a Schuman limited partnership which would result in net profits to Short over the terms of the transaction.

– ... Short and Schuman had an agreement in the present case, evidenced by computer printouts, to sell Eastwind....

– Short and Schuman had also discussed the sale of the second undivided half interest of Eastwind to a Schuman limited partnership for a price greater than the price of the first undivided one-half interest which would result in a profit to Short.

– The testimony of Short and Schuman leaves no doubt that Schuman intended to purchase the entire property for syndication even though he and Short had agreed only to the terms of the purchase of the first half.

– ... the purchase price of the second half would be at a higher sum because presumably the entire project would have improved by that time and would be increased in value.

– In addition to the profits Short would receive from the purchase payments, Short's agreement with Schuman provided that Short would receive the cash flow from operations for a period of time which would result in additional net profits to Short.

– All of the required capital improvements to upgrade the property not otherwise reimbursed by Chatlee would have been paid by Short from the cash flow from operations. After payment of the costs of upgrade, the cash flow from operations would still have resulted in a net profit to Short.

(R. 1549–56).

The remand court concluded as a matter of law that:

– Short's proof of his anticipated resale to Schuman is as certain as can reasonably be expected under the circumstances.

– Short's success with other projects comparable to Eastwind demonstrates his ability to turn an unprofitable complex with a low occupancy rate into a viable one.

– The Evidence supports an award of $2,570,000 to Short from Eden United to compensate Short for the profits he lost by reason of Eden United's tortious interference.

(R. 1557–58).

As the foregoing indicates, the court did not elaborate upon its actual computation of the damage award. The Eden–Short contract for sale set the purchase price for Eastwind at $6,240,000 plus certain interest. After the last payment in 1991, Short would have paid Eden a total of $11,493,966.64, or $5,719,988.32 for each half. (R. 410, 1179). A computer printout representing the agreement between Short and Schuman provided for Short to sell Schuman the first undivided one-half interest at a price of $4,125,000. (R. 1248). Over the course of this purchase, the Schuman limited partners would pay Short a total of $7,005,020.83. Upon this evidence, Short's profit on the first transaction, involving the sale of an undivided one-half of the property, could be computed at $1,285,022.51. The remand court could have considered that Short's minimum profit on the second transaction would be another $1,285,022.51. After *both* sales, Short's total profit would be $2,570,045.02. This calculation would support a $2,570,000 damages award.

■ A securities syndication lawyer testified that the Short–Schuman sales could be legally structured. (R. 913, 927–28).

With respect to capital improvement expenditures, there was testimony that Chatlee would compensate Short for some deterioration in the property and that Short intended to pay costs to upgrade from operating profits. (R. 1013, 539, 544). As to Eden's argument that the amount of the award should be offset by the $85,000 liquidated damages, the remand court concluded as a matter of law that the $85,000 was for the September 1, 1981, breach of contract and distinct "from the damages award for the tortious interference." (R. 1560). This conclusion is supported by the facts described in *Eden, supra,* and the remand court's conclusion that Eden breached the Eden–Short contract on September 1, 1981. We are aware that a reviewing court should not reweigh the evidence or judge the credibility of witnesses. *Eyler v. Eyler* (1986), Ind., 492 N.E.2d 1071. Hence, the total lost profit award of $2,570,000 could be supported by the evidence of record were we not convinced that one finding of fact necessary to such hypothetical calculation of the award is fatally absent: that there was an agreement for a second sale sufficient to award lost profit thereon. We find the court to have correctly noted that the parties "discussed" a second sale. As to specifics, we review testimony about a second sale. Schuman said the agreement about a second sale was "much less defined," (R. 204); "there was no agreement" about price or structure as to the second sale, (R. 105); "there were no terms or conditions" agreed about the second sale, (R. 159); and he "didn't know what the terms and conditions would be." (R. 160). Schuman repeatedly testified that "the terms of the [second] transaction hadn't yet been agreed to." (R. 177, 187). Short testified that "Mr. Schuman had not actually agreed" to a price for the second half sale and that the second sale terms "were very uncertain" and "not fixed." (R. 437, 443). Thus, the content of those discussions between Schuman and Short fails to rise to the level of agreement necessary to sustain a lost profit award for the second sale of one-half the property.

■ Further, there is the sense of speculation about any computation regarding sale of the second half. Even though Short and

Schuman had successfully bought and sold in single transactions smaller real estate units in the past, the Eastwind venture was a considerably larger project requiring the amalgamation of two limited partnerships by Schuman (something the parties had never done before), with the second limited partnership being formed several years after formation of the first. And, the sale of the second one-half of Eastwind to Schuman at a higher price was contingent upon the parties' expectation, hope or conjecture that Eastwind would appreciate in value and prove to be profitable by the time of the second sale.

■ If the trial court's computation of lost profit paralleled that which we have hypothesized, then we would affirm an award for one-half the amount as the profit Short lost from the sale of the first one-half. Accordingly, we affirm upon condition that judgment for $1,285,000 to Short from Eden be entered as lost profit from the first sale of one-half of the property to Schuman. Ind.Appellate Rule 15(N) ("A judgment may be affirmed on conditions."). In the alternative, and in the event the court's calculation was not as we hypothesized, we remand for a determination of Short's damages for profits he lost because he was unable to sell the first one-half of the property to Schuman.

### 2. Prejudgment Interest

■ Eden claims the court's order for prejudgment interest on the damages award for lost profits is erroneous. Long ago, our supreme court considered the concept of interest as an element of damages in a tort action. Reasoning that because "in many cases long delays inevitably result" before final adjudication and after such delays a "plaintiff could not be fully compensated" for his loss if the law "h[e]ld out to a tort-feasor a premium on delay," the supreme court adopted the following standard governing the award of prejudgment interest:

> The true test to be applied as to whether interest should be allowed before judgment in a given case or not is, therefore, not whether the damages are unliquidated or otherwise, but whether the injury and consequent damages are complete and must be ascertained as of a particular time and

in accordance with fixed rules of evidence and known standards of value, which the court or jury must follow in fixing the amount, rather than be guided by their best judgment in assessing the amount to be allowed for past as well as future injury, or for elements that cannot be measured by any fixed standards of value.

*New York, C. & St. L. Ry. Co. v. Roper* (1911), 176 Ind. 497, 96 N.E. 468, 472–73. We have frequently referred to the *Roper* standard in the course of appellate review. *See, e.g., State Farm Fire & Cas. v. Graham* (1991), Ind., 567 N.E.2d 1139; *Lindenborg v. M & L Builders and Brokers, Inc.* (1973), 158 Ind.App. 311, 302 N.E.2d 816. Under the guidance of *Roper*, we have found prejudgment interest proper when "[t]he only determination for the trier of fact is whether liability for damages exists," *Nering v. Stockstill* (1983), Ind.App., 448 N.E.2d 695, 697, but found such interest "not proper when the court must determine the value of the liability." *Id.* (citing *Indiana Industries, Inc. v. Wedge Products* (1982), Ind.App., 430 N.E.2d 419, 427).

Short directs us to *Fort Wayne Nat'l Bank v. Scher* (1981), Ind.App., 419 N.E.2d 1308, for the proposition that the award of prejudgment interest in a tort action is "essentially a *discretionary* award." Appellee's Brief at 27. To cite *Fort Wayne* for this proposition requires isolating the phrase "the notion that when all the necessary elements are present and undisputed, the award of damages for loss of use is a discretionary matter" from the context of its facts and procedural posture. In *Fort Wayne*, the appellant claimed entitlement to prejudgment interest as a matter of right; our review of Indiana decisions found "general agreement as to the prerequisites to recovering such damages" but "some confusion on whether the award, once the prerequisites are established, should be of right or discretionary with the fact finder." *Id.* at 1311. We then held that "upon the facts before us the court erred in not awarding damages for the lost use of the automobile and payroll checks from the time of their conversion." *Id.* at 1312. In the instant case, the appellant is not claiming entitlement but is claiming the

award of prejudgment interest is erroneous because the prerequisites were unmet.

■ Beyond the challenges Eden mounts to the calculation of lost profits based on the testimony of other witnesses, Eden also notes the "wide variety of possible 'lost profits' figures" asserted by Short himself at various times in the course of this litigation. Appellant's Brief at 38. Eden argues that the amount of profits lost by Short does not meet the "ascertainable by known standards of value" prerequisite for an award of prejudgment interest. We agree. Throughout the history of this case, there have been significant disputes as to the amount of profits lost by Short as a result of Eden's actions. Because the value of Short's loss could not be ascertained by fixed rules but rather was determined by the "best judgment" of the court, the award of prejudgment interest was erroneous. *Roper, supra.*

### 3. *Post-judgment Interest*

Indiana law provides for interest on money judgments from the date of the finding of the court and sets the rate for such interest. Ind.Code Ann. § 24–4.6–1–101 (Burns Supp. 1994).[4]

Eden's first challenge to the award of post-judgment interest is to its commencing on May 1, 1989, the date of the original trial court order. Because the Court of Appeals "specifically reversed the nominal damages award on Short's tort claim contained in the 1989 Judgment," Eden argues, post-judgment interest cannot begin to accrue until the date of the remand court's judgment. Appellant's Brief at 40. Short responds that the trial court awarded Short "a judgment for 'nominal compensatory damages' of $1.00," and the Court of Appeals then "affirmed the compensatory award, but modified the amount of the award." Appellee's Brief at 29. We agree with Eden.

4. I.C. 24–4.6–1–101 reads as follows:
Except as otherwise provided by statute, interest on judgments for money whenever rendered shall be from the date of the return of the verdict or finding of the court until satisfaction at:
    (1) The rate agreed upon in the original contract ...; or

The 1989 trial court order awarded Short "nominal compensatory damages in the amount of One Dollar" as "judgment for tortious interference" on the part of Eden. (R. 1368). Nominal damages were defined by our supreme court in 1876 as:

> damages ... such as a party is entitled to for a mere nominal breach of his rights, where no actual damages have been suffered,—*damnum absque injuria*—and may be a cent, five cents, or a dime,[5] or such insignificant sum in relation to the case as would fall within the maxim, *de minimus non curat lex.*

*Glass v. Garber* (1876), 55 Ind. 336, 340. Our 1991 review of the trial court's findings left us with no doubt that Short had demonstrated "that profits had in fact been lost." *Eden, supra* at 928. Because such damage was shown, nominal damages were held to be erroneous.

■ We further look to the *Eden* opinion. Our initial summary of the outcome of our appellate review reads as follows: "We affirm the judgments as to all the defendants ... and reverse the trial court's ruling on compensatory damages." 573 N.E.2d at 922. Similarly, our conclusion states that the judgment was affirmed in part and "reversed in part as to compensatory damages ... and remanded for an award of compensatory damages." *Id.* at 934. According to *I.L.E.,* "[a] reversal has the effect of vacating the judgment," and "the parties are restored to the positions they held before the judgment was pronounced and must take their places in the trial court at the point where the error occurred and proceed to decision." *I.L.E. Appeals* § 657 (1957). We cannot agree with Short's contention that *Eden* affirmed the compensatory award and remanded for modification of the amount. After the award was reversed, there was no award for the remand court to modify.

    (2) An annual rate of right percent (8%) if there was no contract by the parties.

5. To illuminate the court's frame of reference, they held that the plaintiff's expenditure of three dollars and a half entitled him to something more than nominal damages.

■ Therefore, post-judgment interest would properly begin on the date of the remand court's order, February 25, 1994. Because our decision affirms a judgment for Short's lost profits on sale of the first one-half of Eastwind, that date will still trigger the commencement of interest accrual.

Eden next challenges the award of post-judgment interest as failing to comply with the statutory 8% interest rate. Short concedes that the amended statute, effective January 1, 1994, see 1993 Ind.Acts 208 § 6, reduced Indiana's post-judgment interest rate from 10% to 8%.

Post-judgment interest should be at the rate of 8%.

## 4. *Discount to Present Value*

Finally, Eden claims the court's failure to discount Short's lost profits award to its September 1981 present value is "another clear error." Appellant's Brief at 33. Not only does the law require the award be discounted, Eden argues, but Short "admi[tted] that a reduction to present value is required." *Id.* at 35.

■ Present value has been defined as representing the present value of a sum of money that is to be paid over a period of years, with the discounted award being an amount which could be invested to yield the future sum. *See, e.g., Ward Development Co., Inc. v. Ingrao,* (1985), Ct.Spec., 63 Md. App. 645, 493 A.2d 421, 428. We explained the rationale of discounting an award on a contract land sale where the land was subject to condemnation: the seller is entitled only to the present value of his contract because otherwise the seller "would have the use of the money for the period of time before maturity during which time she is not entitled to it, and [the buyer] would be deprived of it during that time, as well as the use of the real estate." *Dye v. Schick* (1920), 74 Ind.App., 459, 129 N.E. 242, 243.

■ The general practice is to discount an award for lost profits.

An award based on net profits that were to be paid at some future date is reduced to the present value of that net profit, the court taking account of the fact that the plaintiff is being awarded those profits in advance of the time that he otherwise would have received them.

22 Am.Jur.2d *Damages* § 647, p. 709 (1988). According to Robert L. Dunn, *Recovery of Damages for Lost Profits,* (1992):

Future profits should be discounted at an appropriate rate because the purpose of the award of damages is to provide a fund that, with principal and interest, will yield plaintiff an amount equivalent to its loss. Thus, if the award is to compensate for a loss of profits projected over 10 years, the amount should be that which, if invested for 10 years at appropriate (probably conservative) rates of return, would produce the amount of the loss. An award today of the amount that would be earned 10 years hence will give plaintiff more than is necessary to make plaintiff whole.

*Id.* at § 6.16A "Discounting Future Damages," p. 413. Consistent with Dunn's example, Short's evidence of lost future profits contemplated a ten year time frame.

Further, as noted by Eden, Short stated that "a discount rate must be applied to Short's cash flow stream" and "appl[ied] a 14% capitalization rate" in his initial appellate brief to this court. And, Short's own expert witness employed a 14% discount or capitalization rate in his testimony. (R. 731).

Accordingly, we hold that it was error not to discount the award of lost profits.

Affirmed on condition or remanded in part and reversed in part.

RILEY and NAJAM, JJ., concur.