

FILED

May 29 2020, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Michael L. Carmin
Daniel M. Cyr
CarminParker, P.C.
Bloomington, Indiana

ATTORNEYS FOR APPELLEES

Sean M. Clapp
Sean T. White
Clapp Ferrucci
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael O. Cain and Linda A. Raymond, *Appellants-Plaintiffs,* v. William J. Huff, II, Revocable Trust Declaration, Dated June 28, 2011, and Nicole E. Huff Revocable Trust Declaration, Dated June 28, 2011, *Appellees-Defendants* | May 29, 2020 Court of Appeals Case No. 19A-PL-2176 Appeal from the Monroe Circuit Court The Honorable Holly M. Harvey, Judge Trial Court Cause No. 53C06-1804-PL-755 |

**Baker, Judge.**

[1] This case has been here before. Michael Cain and Linda Raymond (collectively, Cain) are homeowners in The Shores subdivision in Monroe County. William and Nicole Huff (the Huffs) own over 200 acres adjacent to The Shores. The Huffs have an easement to use a roadway in The Shores to access their real estate. Cain sought to enjoin the Huffs from their use of the easement to conduct logging activities on their real estate. The trial court granted a preliminary injunction, which this Court vacated as overbroad. On remand, Cain renewed his prior motion and filed a new one addressing a different portion of the Huffs' real estate. This time, the trial court denied the requests for preliminary injunction. We affirm.

## Facts

[2] In March 1990, Kenton Robinson granted an easement (the Grant of Easement) to Terre Haute Real Estate Corporation (THR), the then-owner of property adjacent to Robinson's property. Subsequently, Robinson conveyed his real estate, which became The Shores, a residential subdivision. Cain is the current owner of Lot 9 in The Shores. The Huffs are the current owners of the real estate adjacent to the Shores (the Huff Real Estate), including the former property owned by THR (the THR Property), and are the successors in interest to the Grant of Easement.

[3] The Grant of Easement contains multiple easements. Relevant here are easements allowing the Huffs to use Shady Side Drive, the principal road serving The Shores, and a fifty-foot wide section over Lot 1 and part of the

Common Nature Preserve in The Shores, which connected The Shores to a part of the Huff Real Estate. The Huffs' use of the easements was limited to construction, development, and use of single-family residences that would be built on the Huff Real Estate.

[4] The Huff Real Estate totals over 200 acres, including the THR Property and approximately 44 acres that they acquired from Chumley, LLC (the Chumley Parcel). The only way to access the THR Property is via the easements in The Shores. The only way to access the Chumley Parcel (by land) is via the THR Property.

[5] The subsequent events, as described by this Court in the first appeal involving this litigation, are as follows:

> The Huff Real Estate is heavily wooded and hilly land, and access by land to the Huff Real Estate is via the three access easements. After the Huffs acquired their land, they . . . developed a Stewardship Plan specifically for the Huff Real Estate, which was finalized in July of 2017. . . . The Stewardship Plan included certain well-delineated goals for the Huff Real Estate, including to improve the stand of trees, improve the wildlife habitat, control exotic and invasive species, provide an enjoyable place to recreate, selectively harvest trees throughout the woods in the future, develop four home sites, provide better access throughout the property, and develop fire trails.
>
> ***
>
> In December 2017, the Huffs entered into a contract with Tri-State Timber ("Tri-State") to cut and remove trees from the Huff Real Estate. The Huffs were to receive a percentage of the

proceeds from the sale of the removed trees. . . . Around April 10, 2018, Tri-State began harvesting the timber on the Huff Real Estate, and Tri-State expected the work to be finished in approximately ten weeks, weather permitting. As part of its logging activities, Tri-State drove large commercial logging trucks and equipment over Easement No. 1, Shady Side Drive, which is a hilly and curvy two-lane road with no sidewalks or shoulders.

On April 18, 2018, Cain filed his complaint for declaratory judgment and injunctive relief. In the complaint, Cain requested declaratory judgment to determine the rights granted to the Huffs by the Grant of Easement and for a declaration that the easements do not authorize ingress and egress for commercial logging activity on the Huff Real Estate. Cain also requested a permanent injunction against the Huffs, enjoining use of the easements for commercial logging activities or any purpose other than specifically authorized by the general conditions in the Grant of Easement. . . .

On May 3, 2018, a hearing was held on the issue of a preliminary injunction. At the hearing, Cain presented evidence that he is a member of The Shores Homeowners' Association and owned property in The Shores. Cain testified that he objected to the Huffs' use of the easements to remove logs from the Huff Real Estate for commercial sale even if for the development of single-family homes. Cain further testified, "I feel like these logging trucks and this machinery are trespassing across the easements because they don't have permission to be there." Cain also presented evidence that the use of logging trucks on the easements is an annoyance and inconvenience to him, although he only lives in his home in The Shores approximately four months out of the year. Cain testified that he had safety concerns regarding the logging trucks using the easements and introduced a picture of a neighbor standing behind a mailbox as a logging truck passed, but Cain did not have any knowledge of any

accidents occurring on Shade [sic] Side Drive in the years since he has owned his property.

***

At the hearing, William J. Huff ("William") testified that, although he was clearing trees from the Huff Real Estate, he was not in the process of building homes on the land; instead, he was "preparing for the future use of [the] land." The evidence presented at the hearing included William's statement that the logging activity on the Huff Real Estate at the time the complaint was filed was to remove trees in accordance with the Stewardship Plan. In discussing what is necessary for future development, the Huffs presented testimony from a civil engineer that the "standard first step in a development project is clearing" the land. After reviewing the relevant portions of the Grant of Easement, the civil engineer testified that the development and use of the Huff Real Estate would include "clearing and grading, establishment of building sites for these buildings," the extension of utility lines, and building of homes and garages. The engineer further testified that, as part of this process, any valuable timber that is removed during the clearing could be sold to help offset costs.

William testified that he understood that the process of harvesting the timber would only continue for a period of about eight weeks, depending on weather, and that harvesting would not need to be done again for approximately ten years. Evidence was presented that, once the timber was harvested, a ten to fifteen-year rotation was expected before harvesting needed to occur again but was dependent on the growth rate of the timber and the presence of diseases or other outside forces.

The Huffs presented evidence that their contract for selective harvesting with Tri-State was worth approximately $500,000, but

they did not show what percentage of that value they were to receive from Tri-State. The Huffs also maintained that they would incur penalties and fees associated with the cessation of work under their contract with Tri-State and that timber worth $20,000 had already been cut on their land and would spoil if not removed.

On May 8, 2018, the trial court entered its order granting Cain relief and prohibiting the Huffs from using the easements for anything other than the construction, development, and use of single-family structures. The trial court specifically ordered that the Huffs were enjoined from "using the [easements] through The Shores . . . for access to [the Huff Real Estate] except for the construction, development and use by [the Huffs] of single-family residential structures, which may include guest and caretaker quarters and other buildings attendant thereto." The trial court further enjoined the Huffs from "use of the [easements] described in the Grant of Easement, which encumber [the Huff Real Estate,] for commercial logging or for hauling logs or trees, or forestry activity."

*William J. Huff, II Revocable Tr. Declaration, Dated June 28, 2011 v. Cain* [*Huff I*], 120 N.E.3d 1029, 1031-35 (Ind. Ct. App. 2019) (internal citations omitted), *reh'g denied, trans. denied*.  This Court noted that while the language in the first paragraph of the trial court's order closely mirrored the language of the original Grant of Easement, the language in the second paragraph, which enjoined the Huffs from using the easements for commercial logging, hauling logs or trees, or any forestry activity, impermissibly encroached on the Huffs' "ability to exercise their rights on their property." *Id.* at 1037.  Specifically, this Court found and ordered as follows:

Under the language in the Grant of Easement, the Huffs' use of the easements was limited to the construction, development, and use by the Huffs and their grantees and assigns of six single-family residential structures. The evidence presented established that the Huff Real Estate is comprised of approximately 240 acres adjacent to The Shores, which consists of heavily wooded and hilly land with the only access by land being the three access easements granted in the Grant of Easement. In order for reasonable development or use of the Huff Real Estate, it is clear that some prudent logging and removal of trees will be necessary and that the hauling and removal of trees would be essential in developing the Huff Real Estate as contemplated in the Grant of Easement. We, therefore, conclude that the preliminary injunction ordered by the trial court was overbroad as it enjoined the Huffs from activities on the Huff Real Estate that would be necessary to develop the property and effectively prohibits them from accomplishing what is explicitly granted in the Grant of Easement. Based on this, we vacate the trial court's order granting the preliminary injunction.

. . . Prudent logging of the Huff Real Estate is essential for the reasonable use and development of the property, and as the Huff Real Estate is landlocked, the easements will need to be used to facilitate this prudent logging. Some sort of middle ground should be sought between the parties to accomplish this end, and this court urges the trial court to consider on remand whether the covenants on which a middle ground cannot be found are contrary to law and should be vacated.

*Id.* at 1037-38. Sometime in March 2019, the Huffs began logging activities on the Chumley Parcel, using the easements to access that real estate.

[6] On May 3, 2019, Cain filed a second motion for a preliminary injunction (the Chumley Motion). In that motion, Cain stated that subsequent to the earlier

proceedings in the litigation, the Huffs "have extended their activities and are now engaged in commercial logging and other activities on real estate adjacent to the real estate owned by [the Huffs], but real estate which is not described in and is not benefited by the Grant of Easements."[1] Appellants' App. Vol. II p. 94. On May 13, 2019, this Court denied Cain's petition for rehearing.

[7] On May 21, 2019, Cain filed a motion to issue preliminary injunction (Motion to Reissue), asking that the trial court reissue its original preliminary injunction order subject to the limitations described in this Court's opinion. In other words, Cain sought a narrowed preliminary injunction that excluded the overbroad language of the second paragraph of the original order but included the first paragraph as well as the trial court's findings. Cain also included the allegation he raised in the May 3, 2019, motion that the Huffs had extended their logging activities to the Chumley Parcel, which is not benefited by the Grant of Easement.

[8] On June 11, 2019, Cain filed a petition to transfer to our Supreme Court. On June 12, 2019, the trial court held a hearing on Cain's two pending motions. At the outset of the hearing, the Huffs moved to dismiss because they argued that the real estate referenced in Cain's new motions—the Chumley Parcel—was not included in the original complaint. The Huffs did not argue that the trial court lacked jurisdiction based on the pending petition to transfer or the fact

---

[1] Although not explicitly named in Cain's motion, the real estate at issue is the Chumley Parcel.

that this Court's opinion was not yet certified. The trial court took the motion under advisement and held the hearing as planned.

[9] On August 19, 2019, the trial court issued an order denying both of Cain's motions. In pertinent part, it found and concluded as follows:

> 1. [Procedural] Posture
>
> ***
>
> There is no separate treatment of the two paragraphs of the trial court's Order as [Cain] suggest[s]. The Court of Appeals vacated the entire order granting the preliminary injunction.
>
> ***
>
> 2. Law of the Case
>
> [Cain] request[s] this Court to rely upon the findings of fact determined by the trial court in the May 7, 2018 Order, arguing that the appellate court did not specifically reverse or find erroneous any of the trial court's findings. Arguably, the Opinion does not explicitly find error in certain findings . . . . However, as noted above, the Court of Appeals vacated the judgment entirely. . . . Therefore, this Court is not bound by the findings of the trial court in the May 7, 2018 order, and the parties are returned to the legal positions they occupied prior to the May 7, 2018 Order.
>
> In the original Complaint, again [Cain] assert[s] that "commercial logging activities" by [the Huffs] on the [] Huff Real Estate breached the conditions set out in the Grant of Easement and cause[d] damage to the easement area. . . . In the second

Motion for Preliminary Injunction, [Cain] do[es] not assert new facts or new harm. . . . The primary difference in the two hearings related to the work conducted on the Chumley Parcels[2] between March 11, 2019 and the June 12, 2019 hearing, which is substantially similar to the activity at issue in the first hearing on the first motion for injunctive relief.

Under the law of the case doctrine, the appellate court's determination of a legal issue is binding upon the trial court on remand and on the appellate court on a subsequent appeal, given the case with substantially the same facts. . . . The Court of Appeals has already determined that such a restriction on logging activities as requested by [Cain] is contrary to law and that reasonable "development" of the land owned by [the Huffs] includes prudent logging and hauling of timber. For this reason, the Court denies [Cain's] second Motion for Preliminary Injunction.

3.      Chumley Property, Motions to Dismiss and Instructions on Remand

The Court finds additional basis for denying [Cain's] Motion. The evidence presented at the hearing on June 12, 2019 focused both on the prior evidence, as well as evidence concerning the activities which followed the issuance of the Court of Appeals opinion, during which there was no effective preliminary injunction, on the "Chumley Parcels". As the Court has determined, and as the documents filed in support of [Cain's] Complaint show, [the Complaint does not] include[] the Chumley Parcels as subject of the claims against the [Huffs].

---

[2] The "Chumley Parcels" referred to by the trial court is the same real estate referred to by this Court in the singular.

*** 

This Court recognizes that the Court of Appeals . . . generally describes the Huff Real Estate as including the Chumley Parcels. This Court finds that this general inclusion of the Chumley Parcels is not a re-writing or interpretation of the specific Grant of Easement as it is legally defined. Rather, it is a statement of the current circumstances and a conclusion that the [Huffs'] ability to develop their real estate as "contemplated by the Grant of Easement" requires consideration of the Chumley Parcels as well as the [THR] parcels specifically included in the Grant of Easement.

4.    General trespass as basis for injunction

. . . [Cain's] argument at the hearing . . . focuses . . . on the [Huffs'] use of the Access Easements to access the Chumley [Parcels] in general. As the Court has found above, [Cain has] not identified the Chumley [Parcels] in the Complaint, and the Complaint has not been amended. [Cain] seem[s] to argue . . . that the basis for the injunction is not the Grant of Easement at all, but a simple entry on The Shores property by [the Huffs] to get to the Chumley property. Because [Cain has] not amended [his] Complaint to include the Chumley property as a basis for a claim for trespass, the Court denies the Motion for Preliminary Injunction on that basis.

5.    Instructions on Remand

The Court of Appeals . . . strongly recommended that this Court order the parties to mediation to attempt resolution. The Court finds that the recommendation is consistent with this Court's practice of encouraging litigants to resolve disputes without protracted litigation. In addition, because it is clear that the addition of the Chumley Parcels complicates the application of

the conditions of the Access Easements, the Court finds that the parties should attempt reformation of the easements. In the event that mediation is unsuccessful, both parties may proceed with presenting their claims to the trial court for resolution.

Appealed Order p. 1-6. This Court's opinion was certified on August 27, 2019. Cain now appeals.

# Discussion and Decision

We summarize and restate Cain's arguments on appeal as follows: (1) the trial court should have issued a modified version of the first preliminary injunction based on the law of the case doctrine and this Court's first opinion; and (2) the trial court should have issued a new preliminary injunction related to the Chumley Parcel.[3]

# I. Law of the Case

The parties each address the law of the case doctrine. Cain argues that law of the case means that the trial court was bound by the portions of its first preliminary injunction order that this Court did not find problematic— essentially, everything except for the second paragraph of the order that this Court found overbroad. The Huffs, in turn, argue that law of the case requires

---

[3] The Huffs argue that the trial court did not have jurisdiction to consider any of these arguments because this Court's opinion was not yet certified when the trial court considered the motions and issued its order. We decline to consider this argument because the Huffs did not raise it to the trial court. *See Georgetown Bd. of Zoning Appeals v. Keele*, 743 N.E.2d 301, 303 (Ind. Ct. App. 2001) (holding that a "party waives the issue of jurisdiction over a specific case by not raising that issue in a timely manner").

the same outcome for the Chumley Parcel as this Court implemented for the other portions of the Huff Real Estate.

[12] Under the law of the case doctrine, an appellate court's determination of a legal issue is binding on the trial court on remand and the appellate court on a subsequent appeal, given the same case with substantially the same facts. *Ind. Farm Gas Prod. Co. v. S. Ind. Gas & Elec. Co.*, 662 N.E.2d 977, 981 (Ind. Ct. App. 1996). All issues decided directly or implicitly in a prior decision are binding on all subsequent portions of the case. *Id.*

[13] There was one issue that was squarely decided by this Court in its first opinion. Specifically, we found that the portion of the trial court's order that enjoined the Huffs from using the easements for commercial logging, hauling logs or trees, or any forestry activity impermissibly encroached on the Huffs' "ability to exercise their rights on their property." *Huff I*, 120 N.E.3d at 1037. That holding was clearly binding on the trial court on remand and is also binding on this Court on appeal.

[14] The *Huff I* Court did not reach an explicit conclusion with respect to the rest of the first preliminary injunction order. It did, however, state that "[p]rudent logging of the Huff Real Estate[4] is essential for the reasonable use and development of the property, and as the Huff Real Estate is landlocked, the

---

[4] Significantly, the *Huff I* Court included the Chumley Parcel in its "Huff Real Estate" label. *Id.* at 1037 (noting that the Huff Real Estate is comprised of approximately 240 acres adjacent to The Shores).

easements will need to be used to facilitate this prudent logging." *Id.* at 1038. It then vacated the entire order and remanded to the trial court without instructions, aside from its finding that the second paragraph of the order was overbroad.

[15] When this Court vacated the entirety of the order and remanded, it returned the parties to the position that they occupied before the judgment was pronounced. *Eden United, Inc. v. Short*, 653 N.E.2d 126, 134 (Ind. Ct. App. 1995). Nothing in the analysis or holding of *Huff I* indicates that on remand, the trial court was bound by any part of its original order. Instead, the parties and the trial court were returned to the positions they held before the order was entered, with the proviso that the portion of the order found to be overbroad could not be included. Therefore, Cain is incorrect that the trial court was somehow required to make the same findings or reach the same result when considering it anew.

[16] With respect to the portion of the Huff Real Estate that does *not* include the Chumley Parcel, the trial court was bound by this Court's determinations that "some prudent logging and removal of trees will be necessary" and that "the hauling and removal of trees" is "essential" to develop the Huff Real Estate as contemplated in the Grant of Easement. *Huff I*, 120 N.E.3d at 1037. Therefore, to the extent that Cain's Motion to Reissue requests that logging and hauling and removal of trees from the Huff Real Estate be enjoined, the trial court was correct to deny it based on *Huff I*.

[17]     With respect to the Chumley Parcel, however, we do not believe that *Huff I* mandates a resolution one way or another. While the *Huff I* Court included the Chumley Parcel in its definition of the Huff Real Estate, the Court did not squarely consider the Huffs' use of the easements for the Chumley Parcel, which is not directly benefited by the Grant of Easement.[5] Consequently, the law of the case doctrine did not offer guidance to the trial court as it considered Cain's Chumley Motion.[6]

## II.  The Chumley Motion

[18]     Next, we must consider whether the trial court erred by denying the Chumley Motion. The parties spend a great deal of time arguing about whether the Chumley Parcel is sufficiently included in Cain's complaint to be included in the litigation. We will assume for argument's sake that it was, given our predilection for judicial efficiency and addressing issues on the merits when possible. We also note that Cain has since amended the complaint to clearly include the Chumley Parcel; therefore, going forward, it is clear to all parties that it is included.

---

[5] The reason, of course, that the *Huff I* Court did not explicitly conduct this analysis is because the Huffs did not begin logging activities on the Chumley Parcel until after *Huff I* was decided.

[6] Cain does not offer much in the way of argument regarding the Reissue Motion aside from the law of the case doctrine. Much of the analysis below regarding the Chumley Motion is equally applicable to the Reissue Motion. Consequently, for many of those same reasons, the trial court did not err by denying the Reissue Motion.

[19] The grant or denial of a preliminary injunction is within the trial court's sound discretion. *Reilly v. Daly*, 666 N.E.2d 439, 443 (Ind. Ct. App. 1996). In conducting our review, we will consider the evidence in the light most favorable to the judgment and will construe the findings together liberally in favor of the judgment. *Barlow v. Sipes*, 744 N.E.2d 1, 5 (Ind. Ct. App. 2001).

[20] The party seeking injunctive relief is required to show, by a preponderance of the evidence, that the facts and circumstances entitle him to injunctive relief. *Id.* There are four factors to consider when weighing a preliminary injunction:

> 1) whether the plaintiff's remedies at law are inadequate, thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue; 2) whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; 3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of the injunction may inflict on the defendant; and 4) whether, by the grant of the preliminary injunction, the public interest would be disserved.

*Id.* Injunctive relief should only be granted in the rare instances in which the law and the facts are clearly within the moving party's favor. *Id.*

## A. Adequate Remedy at Law

[21] It is well established that a purely economic, calculable, or money damages harm is not irreparable. *Barlow*, 744 N.E.2d at 6. Cain admitted that any damage done to the road as a result of the Huffs' activity could be fixed. The Huffs offered to issue a $50,000 bond for any damage done to the road.

Additionally, evidence was presented that at the time of the hearing, there had been very minimal cracking and ordinary wear and tear to the road, all of which is readily reparable. The Huffs have agreed on multiple occasions to fix any damage done to the road after the timber harvesting is completed. Consequently, it is clear that any potential damage is readily calculable and compensable.

[22] Cain essentially concedes that point and argues, instead, that when the action seeking to be enjoined is unlawful, the plaintiff need not make a showing of irreparable harm. *Ferrell v. Dunescape Beach Club Condos. Phase I, Inc.*, 751 N.E.2d 702, 713 (Ind. Ct. App. 2001). He maintains that the Huffs' use of the easement amounts to an illegal trespass and, as such, he need not show irreparable harm.

[23] Cain is incorrect, because under the facts of this case, the Huffs cannot have committed a trespass even if their use of the easement exceeds their authority thereunder. It has long been the case in Indiana "that an action for trespass to real estate cannot be maintained for an invasion of a right of way or easement." *Ind. Mich. Power Co. v. Runge*, 717 N.E.2d 216, 227 (Ind. Ct. App. 1999) (internal quotation marks omitted). This rule "'is based upon the principle that trespass actions are possessory actions and that the right interfered with is the plaintiff's right to the *exclusive* possession of a chattel or land.'" *Id.* (emphasis added). In other words, because the Huffs have an easement and a concomitant right to use the roadway, they cannot have committed a trespass

even if their use of the roadway exceeded the terms of the easement.[7] Consequently, there is no evidence that they acted unlawfully, and Cain is required to show irreparable harm—which he has not done. Therefore, this factor weighs in favor of the Huffs.

## B. Likelihood of Success at Trial

[24] To consider Cain's likelihood of success at trial, which will turn on whether the Huffs have exceeded/are exceeding their authority under the easements, it is worthwhile to recap the history of the real estate at issue.

- In 1990, Kenton Robinson owned real estate in Monroe County. He granted easements to THR, which then owned the property adjacent to Robinson's (the THR Property). Those easements are the ones at issue here.
- Robinson later conveyed his real estate to another entity, which ultimately transformed that real estate into The Shores subdivision.
- In February 2017, the Huffs acquired the THR Property from THR. The property they acquired included the 193 acres adjacent to The Shores, to which the easements attach.
- At some point not revealed by the record, the Huffs acquired from Chumley, LLC, approximately 44 acres that are adjacent to the THR Property. Those 44 acres are the Chumley Parcel.

---

[7] Both cases cited by Cain—*Washel v. Bryant*, 770 N.E.2d 902 (Ind. Ct. App. 2002), and *Paul v. I.S.I. Servs., Inc.*, 726 N.E.2d 318 (Ind. Ct. App. 2000)—are inapposite, as the first centers on a covenant not to compete and the second centers on divorce and corporate embezzlement.

- The only access to the THR Property is through The Shores, and the only access by land[8] to the Chumley Parcel is through the THR Property.[9]
- The entirety of the Huff Real Estate at issue herein is a contiguous area of approximately 237 acres.

Cain insists that because the Huffs are using the easement on the roadway in The Shores to access the Chumley Parcel (via the THR Property), which is not directly benefited by the easement, they have exceeded their authority and he is likely to succeed at trial.

[25] This argument is based on a fundamental misunderstanding of property law in Indiana. Although we have used the labels herein for the sake of clarity, in reality, there is no longer a separate "THR Property" or "Chumley Parcel." Instead, there is simply the Huff Real Estate, which includes all 237 acres. If we were to accept Cain's argument, we would be holding that the Huffs are prohibited from accessing one part of their real estate from another part of their real estate. We cannot countenance that result.

[26] Once the Huffs use the easement to cross the servient property of The Shores, as the Grant of Easements give them the right to do for the purposes stated therein, they have all the property rights needed to access any portion of the Huff Real Estate for those same purposes. *See Collins v. Metro Real Estate Servs.*

---

[8] The Chumley Parcel may be accessed by water, but the only land-based access is via the THR Property.

[9] In other words, if the Huffs were not permitted to access the Chumley Parcel from the THR Property (via The Shores), the Chumley Parcel would be wholly landlocked.

*LLC*, 72 N.E.3d 1007, 1014 (Ind. Ct. App. 2017) ("'During the unity of title the owner may subject one of several tenements, or adjoining parcels of land, to such arrangements, incidents, or uses with respect to the other as may suit his taste or convenience, without creating an easement in favor of the one as against the other. This is so because the owner cannot have an easement in land of which he has the title.'") (quoting *John Hancock Mut. Life Ins. Co. v. Patterson*, 103 Ind. 582, 586, 2 N.E. 188, 190-91, (1885)). Cain argues that the Huffs are not allowed to give themselves an easement on their own property, but this misses the point—they do not need to give themselves an easement because they have unity of title across the entire acreage.

This Court has already found that by engaging in the activities described herein, including prudent logging, the Huffs are not exceeding the rights provided by the easement. That they are now using the roadway in The Shores to access part of their real estate that was not included in the Grant of Easements does not require a different result. Therefore, we find that Cain has not established a likelihood of success on the merits, and this factor weighs in favor of the Huffs.

## C. Harm to Cain v. Harm to Huffs

As noted above, the threatened harm to Cain is primarily damage to the roadway. There is no evidence of substantial damage, and there is plenty of evidence that any damage will be easily repaired. There is likewise no evidence of harm to pedestrians or local traffic. Furthermore, the logging activities will last for only approximately eight to ten weeks once every ten to fifteen years.

On the flip side, if the injunction were granted, the Huffs would have to pay a hefty penalty to Tri-State and would forfeit between $500,000 and $2 million in lost revenue. They would also lose approximately $20,000 as a result of the spoliation of already-cut timber. Additionally, a prohibition on forestry would prevent the Huffs from caring for and enjoying their land, including removing diseased trees and generally cleaning up and maintaining the forest. We find that this factor weighs in favor of the Huffs.

## D. Public Interest

Finally, we must consider the public interest. Cain argues that the public interest would be served by an injunction because it would protect the public's right to contract for specific language in easements. As noted above, however, we do not believe that the evidence in the record shows that the Huffs have exceeded that which the Grant of Easements permits.

The Huffs, in contrast, note that they are developing their land pursuant to a Stewardship Plan. The goals of that plan are to:

> improve the stand of trees, improve the wildlife habitat, control exotic and invasive species, provide an enjoyable place to recreate, selectively harvest trees throughout the woods in the future, develop four home sites, provide better access throughout the property, and develop fire trails.

*Huff I*, 120 N.E.3d at 1033. Many of these goals confer a clear and direct public benefit. Additionally, the improved access throughout the Huff Real Estate for fire trails directly implicates the public interest, as it allows the authorities to

better combat forest fires. We can only conclude that the public interest is more directly and significantly served by the denial of the preliminary injunction.

[32] In sum, we find that all four factors weigh in favor of the Huffs and against the preliminary injunction. Therefore, the trial court did not err by denying Cain's motions.

[33] The judgment of the trial court is affirmed and remanded for further proceedings.

Bradford, C.J., and Pyle, J., concur.